Susan J. CARROLL, Plaintiff–Appellant,

v.

WOLPOFF & ABRAMSON,
Defendant–Appellee.

No. 93–2162.

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1995.

Decided May 4, 1995.

**ARGUED:** Andrea Goodwin Green, UAW Legal Services Plan, Newark, DE, for appellant. Ronald Marc Abramson, Wolpoff & Abramson, Bethesda, MD, for appellee. **ON BRIEF:** Ronald S. Canter, Wolpoff & Abramson, Bethesda, MD, for appellee.

Before WILKINSON and WILKINS, Circuit Judges, and SPROUSE, Senior Circuit Judge.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge WILKINS and Senior Judge SPROUSE joined.

## OPINION

WILKINSON, Circuit Judge:

Appellant Susan J. Carroll challenges the district court's refusal to award attorney's fees equal to the lodestar amount in this litigation brought pursuant to the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. §§ 1692–1692o. Counsel for Carroll submitted a fee request in the amount of $9,783.63. The district court, in reliance on *Farrar v. Hobby,* —— U.S. ——,

113 S.Ct. 566, 121 L.Ed.2d 494 (1992), awarded Carroll $500 in light of her limited success in the underlying litigation. Because we believe that the district court did not abuse its discretion in declining to award the lodestar amount, we affirm.

## I.

Macy's Northeast, Inc., retained the law firm of Wolpoff & Abramson to recover the costs of a ring appellant Carroll acquired from the department store but failed to pay for. When Carroll did not respond to collection letters sent by the law firm, Wolpoff & Abramson brought suit on the debt in Maryland state court. Following a bench trial, the state court entered judgment against Carroll in May 1990. Wolpoff & Abramson then undertook to collect the amount of the judgment debt via further correspondence governed by the FDCPA.

Specifically, the law firm sent a two-sentence, four-line follow-up letter dated June 11, 1990, which purported to advise Carroll of Wolpoff & Abramson's efforts to collect the debt:

> Your past due account is in our office for legal action.
>
> It is imperative that you contact us immediately if you wish to make arrangements to pay this debt prior to additional litigation.

Carroll never responded to the letter; she eventually filed for Chapter 7 bankruptcy.

On May 10, 1991, Carroll brought suit against Wolpoff & Abramson alleging that the June 1990 letter violated the FDCPA in several respects, including a failure to comply with the Act's debt collection notice requirements. *See* 15 U.S.C. § 1692e(11) (requiring disclosure, "in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose").[1] Carroll sought both actual damages for emotional distress precipitated by the June 11 letter and statutory damages of $1,000 pursuant to 15 U.S.C. § 1692k. The district court, noting a split of authority among the circuits as to the necessity of including the debt collection notification language in follow-up correspondence, held that Wolpoff & Abramson need not have repeated the disclosure in the June 11 letter and granted summary judgment in favor of the law firm.

On appeal, this court disagreed. In an opinion dated March 30, 1992, we held that the statutory mandate was clear: the debt collection notification must be included in *all* correspondence. *Carroll v. Wolpoff & Abramson,* 961 F.2d 459, 461 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 298, 121 L.Ed.2d 222 (1992). We remanded to the district court to determine the appropriate damages award in light of Wolpoff & Abramson's failure to insert the requisite disclosure in the June 11 letter.

On remand, Carroll abandoned her claim for actual damages and sought only $1,000 in statutory damages. *See* 15 U.S.C. § 1692k(a)(2)(A) (providing for statutory damages, in addition to actual damages, "as the court may allow, but not exceeding $1,000"). In a judgment order dated June 15, 1993, the district court awarded damages in the amount of $50 under § 1692k(a)(2)(A) for Wolpoff & Abramson's single violation of the Act.

Carroll thereafter filed a motion for award of attorney's fees pursuant to § 1692k(a)(3). The UAW Legal Services Plan, Carroll's counsel, submitted affidavits detailing various legal services provided to Carroll and requesting compensation in the amount of $9,783.63. In an order dated August 9, 1993, the district court awarded $500 in attorney's fees. In its memorandum opinion, the court noted that Carroll had received little more than nominal damages in the underlying litigation and that Wolpoff & Abramson's single violation of the Act was at most a technical misstep. Carroll appeals the award, claiming error in the district court's failure to adhere to the lodestar formula announced in *Hensley v. Eckerhart,* 461

---

1. Carroll also alleged that the letter represented an attempt to collect a debt by use of false or deceptive means, in violation of § 1692e(10), and that the defendant had failed to provide the validation notice required by § 1692g. The district court awarded summary judgment to Wolpoff & Abramson on both claims; Carroll did not appeal those rulings.

U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The lodestar is the amount determined by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Id.*

## II.

█ It is for the district court in the first instance to calculate an appropriate award of attorney's fees. *See generally Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. On appeal, "this court has a duty to affirm an [attorney's fee] award which falls within the district court's broad discretion." *Daly v. Hill*, 790 F.2d 1071, 1085 (4th Cir.1986). *See also Ballard v. Schweiker*, 724 F.2d 1094, 1098 (4th Cir.1984).

This abuse of discretion standard serves several policies of overriding importance. First, district courts enjoy a decided advantage over appellate courts in calculating fee awards. As a trial court, the district court has a "ringside view of the relevant conduct of the parties and of the underlying legal dispute," *Alexander v. Mayor & Council of Cheverly, Md.*, 953 F.2d 160, 162 (4th Cir. 1992), and accordingly has ready access to the data that should inform a fee calculation. *See also Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941 (recognizing that the abuse of discretion standard is fitting "in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters"); *Ballard*, 724 F.2d at 1098 (noting that a district court "is in the better position to evaluate the quality and value of the attorney's efforts" when calculating a reasonable fee).

Reviewing fee awards solely for abuse of a district court's discretion restricts a litigant's propensity to engage in secondary or satellite litigation. Justice Brennan aptly characterized appeals of attorney's fee awards as "one of the least socially productive types of litigation imaginable." *Hensley*, 461 U.S. at 442, 103 S.Ct. at 1944 (Brennan, J., concurring in part and dissenting in part). The systemic costs of such appeals are often disproportionate to the limited benefits achieved by appellate second-guessing of a district court's fee calculation.

*Hensley* warned in fact that "[a] request for attorney's fees should not result in a second major litigation." 461 U.S. at 437, 103 S.Ct. at 1941. Were we inclined to review *de novo* every award of attorney's fees by a district court, however, we would in essence guarantee dual appeals in FDCPA and similar cases: a first appeal from the district court's resolution of the merits and a second appeal seeking review of the district court's fee award. It is precisely such litigation that the abuse of discretion standard discourages. *Cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990) (deference to district courts' determinations of appropriate Rule 11 sanctions will "discourage litigants from pursuing marginal appeals, thus reducing the amount of satellite litigation").

## III.

█ The abuse of discretion standard governs our review of fee awards under the statute in this case. Section 1692k of the FDCPA indicates that a successful plaintiff is entitled to recover, in addition to actual and statutory damages, costs plus "a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). It is true that in *Hensley*, the language of the relevant attorney's fee statute itself incorporated the abuse of discretion standard. *See* 42 U.S.C. § 1988 ("the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs"). *See also Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1028 (4th Cir.1993) (en banc) (noting that ERISA § 502(g), 29 U.S.C. § 1132(g), a statute worded similarly to § 1988, "places the determination of whether attorneys' fees should be awarded in an ERISA action completely within the discretion of the district court").

The absence of the term "discretion" in the FDCPA does not, however, dictate a different standard of review. Although the fee award under § 1692k is mandatory in all but the most unusual circumstances, *see Graziano v. Harrison*, 950 F.2d 107, 113–14 (3d Cir.1991), the statute makes clear that calculation of the appropriate award must be left to the district court. First, the concept of

reasonableness—the statutory centerpiece of the § 1692k fee award—itself implies that the fee calculation is inextricably linked to the facts and circumstances of the underlying litigation. As discussed above, the district court is in the best position to observe and evaluate the factors that should inform the computation of a "reasonable" fee. Moreover, the statutory language announces a clear intent to allow district courts wide latitude in the calculation of appropriate fee awards: a "reasonable" fee is to be "determined by the district court," without further statutory qualification.

The case law interpreting § 1692k reinforces our reading of the statute. In *Hollis v. Roberts,* 984 F.2d 1159 (11th Cir.1993), for instance, the Eleventh Circuit reviewed a § 1692k(a)(3) fee award for an "abuse of discretion." *Id.* at 1160. *See also Harper v. Better Business Servs., Inc.,* 961 F.2d 1561, 1564 (11th Cir.1992) (same). The Second Circuit is in agreement: *Emanuel v. American Credit Exchange,* 870 F.2d 805 (2d Cir. 1989), noted that a reasonable attorney's fee under § 1692k is to be "fixed in the discretion of the district court." *Id.* at 809.

Decisions under similarly worded fee provisions in other consumer protection statutes support our application of the abuse of discretion standard of review. In *de Jesus v. Banco Popular de Puerto Rico,* 918 F.2d 232 (1st Cir.1990), the First Circuit recognized that the attorney's fee provision in the Truth in Lending Act is "virtually identical" to the fee provisions contained in other consumer protection statutes, including the FDCPA. *Id.* at 233. *de Jesus* concluded that although the fee provision "unequivocally entitles a successful Truth–in–Lending plaintiff to an award of attorney's fees" in all but "the most unusual of circumstances," the statute plainly leaves the amount of the award to the discretion of the district court. *Id.* at 233, 234. *See also Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1200–01, 1210 (10th Cir.1986) (fee award under the fee provisions of the Truth in Lending Act, Fair Credit Reporting Act, and FDCPA is to be determined by the

district court in its "considerable discretion"); *McGowan v. King, Inc.,* 616 F.2d 745, 746 (5th Cir.1980) (proper fee award under Truth in Lending Act "is a matter for the sound discretion of the trial judge").

■ It should be clear, then, that § 1692k does not mandate a fee award in the lodestar amount. If the concept of discretion is to have any meaning at all, it must encompass the ability to depart from the lodestar in appropriate circumstances. *Hensley* itself recognized that, in certain circumstances, an award in the lodestar amount may be excessive. When "a plaintiff has achieved only partial or limited success," the district court, in calculating an appropriate fee award, "may simply reduce the award to account for the limited success." *Hensley,* 461 U.S. at 436–37, 103 S.Ct. at 1941. The district court concluded that this case afforded just such a set of circumstances and calculated the fee award accordingly.

## IV.

■ We next examine whether the court exceeded its discretion in awarding only $500 in fees to appellant Carroll. In making this determination in the context of § 1692k, we look to "the substantial Supreme Court precedent pertaining to the calculation of reasonable attorney's fees" under the civil rights statutes. *Graziano,* 950 F.2d at 114. In light of the guidelines announced in *Farrar v. Hobby,* we find no abuse of the district court's discretion on these facts.

First, appellant received only $50 in statutory damages at the close of the underlying litigation. This award was a mere five percent of the amount of statutory damages she initially sought. In addition, Carroll voluntarily abandoned her claim for actual damages for emotional distress on remand from the Fourth Circuit.[2] The district court in turn determined that a fee award of $500— ten times the amount of statutory damages Carroll ultimately received—was appropriate. *See Farrar,* —— U.S. at ——, 113 S.Ct. at 575 (in civil rights action for monetary

---

2. It bears noting that the district court awarded summary judgment against Carroll on two of her three claims under the Act. *See* n. 1, *supra.*

Carroll alleges, however, that she did not seek fees for work performed in connection with those two claims.

damages, district court should consider amount of damages awarded as compared to amount sought in determining appropriate fee award).

*Farrar* reiterated the touchstone of an attorney's fee award first articulated in *Hensley:* " 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Farrar,* — U.S. at ——, 113 S.Ct. at 574 (*quoting Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941). In view of the fact that Carroll abandoned her claim for emotional distress damages arising from Wolpoff & Abramson's conduct and that she was awarded only $50 in statutory damages despite her claim of entitlement to the $1,000 statutory maximum, we cannot say that the "degree of [Carroll's] success" dictated a larger fee award. *See also Graziano,* 950 F.2d at 114 ("if the plaintiff has only partial or limited success, a reduction in the award of attorney's fees [under § 1692k] may be appropriate").

It is also notable that Carroll established at most a technical violation of the § 1692e(11) mandate by Wolpoff & Abramson. Indeed, the district court reasoned that the law firm's conduct "was hard[l]y morally culpable or otherwise deserving of anything more than a very small award of damages." We find no abuse of discretion in the court's conclusion that the fees awarded should bear some rational relationship to the nature of the defendant's violation.

In contrast to Wolpoff & Abramson's technical violation of § 1692e(11), we note that other consumer protection statutes, and indeed, other provisions of the FDCPA, aim at truly abusive or deceitful debt collection, credit reporting, and similar practices. Proof of these sorts of violations may establish a foundation for larger attorney's fee awards. *See, e.g., Crossley v. Lieberman,* 868 F.2d 566, 571 (3d Cir.1989) (attorney violated §§ 1692e(5) and 1692e(10) of the FDCPA in attempting to collect $297 debt by falsely implying that foreclosure action on 68–year–old widow's home was in progress and by failing to inform debtor that she had a right to cure the default); *Comeaux v. Brown & Williamson Tobacco Co.,* 915 F.2d 1264, 1273 (9th Cir.1990) (employer violated Fair Credit Reporting Act by obtaining information on plaintiff from consumer reporting agency under false pretenses; employer intended to use credit report to assist in its defense of plaintiff's action for breach of employment contract).

Carroll nevertheless contends that the significance of her litigation before this court on the proper interpretation of § 1692e(11) warrants a fee award in the lodestar amount. We do not disparage the value of appellant's efforts in clarifying the application of the statute. At the same time, however, appellant achieved no equitable relief of any kind. Thus, it was entirely proper for the district court to view as the salient measure of her success in the underlying litigation the small amount of damages she recovered from the opposing party for its technical statutory violation. The statute in fact does not ordain any particular measure of "success" to be used in calculating a fee. Rather, its terms are open-ended: "[A]ny debt collector who fails to comply with any provision of [the Act] with respect to any person is liable to such person ... in the case of any successful action to enforce the foregoing liability," for "a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). In view of the statutory language, it was not an abuse of the district court's discretion to measure Carroll's success in terms of the nature of Wolpoff & Abramson's violation and the limited damage award she received.

Our holding in no sense means that actions alleging technical statutory violations will never be brought. To the contrary, the Act itself specifically contemplates use of class actions to remedy such violations. *See* 15 U.S.C. §§ 1692k(a)(2)(B) (providing for statutory damages in a class action); 1692k(b)(2) (listing factors to be considered in calculating damages in a class action). Moreover, if Congress wishes additional litigation, it need only provide for enhanced statutory penalties and shifting lodestar awards. Congress' province, however, is not ours. If we were to overturn this fee award, we would over-encourage litigation alleging technical violations of this and other statutes aimed principally at collecting attorney's fees. We think the better course is to allow trial courts the

freedom to engage in limited fee shifting when there has been limited success. Discretion allows district courts latitude in determining fee awards—even those that an appellate court might initially have set in a different amount. The district court viewed this as a nominal damage suit establishing a single, technical violation of the FDCPA. We cannot say that court abused its discretion in awarding a fee that was, albeit modest, ten times the amount recovered from the defendant. It is not apparent that a party satisfying a judgment of $50 must then be compelled to pay almost $10,000 in fees.

## V.

For the foregoing reasons, the judgment of the district court is hereby

**AFFIRMED.**