**J.R. LILIENTHAL, Plaintiff,**

v.

**CITY OF SUFFOLK, and Mark R. Outlaw, Defendants.**

No. 2:03CV229.

United States District Court,
E.D. Virginia,
Norfolk Division.

June 18, 2004.

Douglas L. Steele, Thomas A. Woodley, Woodley & McGillivary, Washington, DC, Gregory A. Giordano, Shuttleworth, Ruloff, Giordano & Swain, Virginia Beach, VA, Counsel for Plaintiff.

Robert W. McFarland, Stacy M. Landis, McGuireWoods, LLP, Norfolk, VA, Counsel for Defendants.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on plaintiff's petition for an award of attorneys fees and costs. For the reasons set forth below, the petition is **GRANTED** in part, and **DENIED** in part.

### I. Factual and Procedural History [1]

Plaintiff J.R. Lilienthal is a lieutenant in the fire department of the City of Suffolk, where Mark R. Outlaw ("Fire Chief Outlaw") is the Fire Chief. In addition, plaintiff has been the President of the Suffolk Professional Fire and Rescue Association since 1998.

On several occasions prior to September 24, 2002, plaintiff spoke to the City Council and employees of the City Manager's Office on various topics concerning the fire department. Plaintiff also associated with members of the City Council, City Manag-

---

**1.** The recitation of the facts underlying this dispute is adapted from *Lilienthal v. City of Suffolk,* 275 F.Supp.2d 684, 688–89 (E.D.Va. 2003).

er's Office, and individual city department directors in the course of addressing fire department matters.

On September 25, 2002, Fire Chief Outlaw met with plaintiff, and handed to plaintiff a memorandum regarding his previous communications with city officials on fire department issues. Plaintiff believes that the policy stated in the September 2002 memorandum violates his First Amendment rights of free speech and association. Since receiving the September 2002 memorandum, plaintiff refrained from addressing substantive fire department matters with the City Council, members of the City Manager's Office, or other department directors.

On October 28, 2002, and on several subsequent occasions, plaintiff requested that the policy expressed in the September 2002 memorandum be rescinded. On March 6, 2003, the City of Suffolk responded to plaintiff's requests by stating that the September 2002 memorandum did not violate plaintiff's constitutional rights. On March 25, 2003, plaintiff filed this lawsuit under 42 U.S.C. § 1983, seeking a declaratory judgment, an injunction, compensatory damages, and punitive damages. (Compl. at 11.)

On March 10, 2004, a hearing was scheduled before United States Magistrate Judge James E. Bradberry. Prior to the hearing, the court inquired of plaintiff and Fire Chief Outlaw whether they had spoken at any length about the September 2002 memorandum. (Mar. 18, 2004, Order at 1.) The parties replied in the negative. (*Id.*) Accordingly, the court advised the litigants and their counsel that the matter would be continued to the following week, and that plaintiff and Fire Chief Outlaw

were to meet and discuss whether the matters raised within the September 2002 memorandum could be resolved in a way that would avoid continuing litigation. (*Id.*)

On March 17, 2004, the parties reconvened before Judge Bradberry and informed the court that, with the exception of one phrase, they had reached agreement on a memorandum expressing a mutually satisfying statement of policy. (Tr. at 2.) Defendants preferred a formulation stating that the new memorandum "supplements" the September 2002 memorandum. (*Id.*) Plaintiff preferred a formulation stating that the new memorandum "supersedes and replaces" the September 2002 memorandum. (*Id.*) The court suggested that the parties delete any reference to whether the March 2004 memorandum supplements or replaces the September 2002 memorandum, and instead include language to clearly indicate that the March 2004 memorandum states governing policy. (*Id.* at 5–7.) The parties agreed to this proposal, and adopted the following as the opening paragraph of the new memorandum:

> This document is intended to govern the nature, scope and place/circumstances under which fire employees may engage in discussion of issues related to the fire and emergency services of Suffolk, Virginia.

(Mar. 18, 2004, Order at 2.)

Throughout the hearing, the court clearly and repeatedly stated its opinion that although the settlement arrived at obviated the need to decide whether constitutional rights had been violated, the nature of the settlement merited the award of attorneys fees.[2] The court was equally clear in

---

2. An incomplete list of the court's comments includes the following: "I think they're going to be entitled to some attorney's fees" (Tr. at 11); "[I]f I was the District Court Judge I would unhesitatingly impose attorney's fees" (*id.*); "The City is going to have to pay an

its opinion that the nature of the settlement and the relief obtained merited a partial, rather than complete, award of attorneys fees.[3] The court ordered that plaintiff submit his petition for fees by April 14, 2004, with defendants' objections to be filed by May 14, 2004, and plaintiff's rebuttal to be filed by May 24, 2004. All filings have been submitted as ordered, and the matter is now ripe for review.

## II. Legal Standards

In any action brought under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting S.Rep. No. 94–1011, at 4 (1976)). The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *Id.* at 437, 103 S.Ct. 1933.

The Supreme Court announced in *Farrar v. Hobby* the standard for qualifying as a prevailing party for purposes of § 1988:

> [A] civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of judgment or settlement.

506 U.S. 103, 112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.*

In determining a reasonable attorneys fee, the proper first step is to calculate the lodestar amount, which results from multiplying "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (quoting *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). To make this calculation, the court must necessarily exclude any hours that are "excessive, redundant, or otherwise unnecessary," and therefore not reasonably expended on the litigation. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. This process requires the use of the same "billing judgment" that guides a lawyer in private practice in billing his client. *Id.*

Although a properly calculated lodestar figure is presumed to be a reasonable fee, *Del. Valley Citizens' Council for Clean Air,* 478 U.S. at 565, 106 S.Ct. 3088, the court's discretion to award fees necessarily "encompass[es] the ability to depart from the lodestar in appropriate circumstances." *Carroll v. Wolpoff & Abramson,* 53 F.3d 626, 629 (4th Cir.1995). Certain considerations, including the twelve factors identified in *Johnson v. Georgia Highway*

---

attorney's fee" (*id.* at 13); "[T]he City picks up the responsibility for some attorney's fees" (*id.* at 16).

**3.** The court's comments included the following: "The Court will not grant the attorney's fees that they are seeking but will grant part of the attorney's fees" (Tr. at 9); "[I]f I was

the District Court Judge .... I wouldn't impose the attorney's fees they'd want" (*id.* at 11); "[Y]ou're going to get an attorney's fee, [but] not as much as you hoped" (*id.* at 13); "[T]he plaintiff loses the right to claim all the attorney's fees they might otherwise get because there is a compromise" (*id.* at 16).

*Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974),[4] may lead the court to adjust a fee upward or downward from the lodestar. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. The "most critical factor" in determining the reasonableness of a fee award is "the degree of success obtained" by the plaintiff. *Id.* at 436, 103 S.Ct. 1933. When a plaintiff has achieved "only partial or limited success," the district court "may simply reduce the award to account for the limited success." *Id.* at 436–37, 103 S.Ct. 1933; *Carroll*, 53 F.3d at 629.

### III. Analysis

Plaintiff seeks an award of attorneys fees in the amount of $132,938.50, and expenses in the amount of $13,968.06. Defendants raise three main arguments in opposition to plaintiff's requested fees: (1) plaintiff is not a "prevailing party" within the meaning of § 1988, and therefore not entitled to attorneys fees; (2) the hours actually expended by plaintiff's counsel were excessive; and (3) plaintiff's award should be reduced to account for limited success on the merits.[5]

### A. Plaintiff's Status as a Prevailing Party

Defendants assert that plaintiff is not a prevailing party within the meaning

of § 1988 because this dispute was resolved without deciding the merits of plaintiff's constitutional claims or nullifying the September 2002 memorandum. Despite these contentions, plaintiff has achieved sufficient relief on his claims to merit the award of attorneys fees.

At the March 17, 2004, hearing, Judge Bradberry aptly described the nature and purpose of this litigation:

> [T]he fact of the matter is that this particular document has affected what [plaintiff] has chosen to do or not chosen to do, and so the resolution of the issue is entirely appropriate because the whole purpose of bringing this action is to try and resolve exactly what firefighters can do in the department.

(Tr. at 5.) In bringing this suit, plaintiff sought to "create an environment where [he] doesn't face a prospect of discipline for exercising what may be a legitimate right to express concern." (*Id.* at 6.)

The settlement here provides plaintiff with meaningful relief on his claims. As Judge Bradberry sensibly observed, determining whether the March 2004 memorandum nullifies, supplements, replaces, clarifies, abolishes, or complements the

4. The twelve factors identified in *Johnson* are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).

5. Defendants also urge that the court further reduce any award of fees to account for other *Johnson* factors, specifically the preclusion of employment by the attorney due to acceptance of the case; whether the fee is fixed or contingent; the experience, reputation, and ability of the attorneys; and the "undesirability" of the case. (Defs.' Br. in Opp. at 15–16.) Because the court finds that these factors are adequately accounted for in the lodestar figure in this case, departure from the lodestar figure on these bases is unnecessary. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (observing that many *Johnson* factors are often fully reflected in the lodestar amount).

September 2002 memorandum is an unnecessary exercise in wordplay. (*Id.* at 3–8.) Plainly declaring the March 2004 memorandum to be governing fire department policy is sufficient to dispel the pall of uncertainty which burdened plaintiff's speech and associational rights, and thereby assure that "[plaintiff's] side is ultimately going to prevail." (*Id.* at 14.) The March 2004 memorandum is embodied in the March 18, 2004, Order of this court, and both that Order and the parties' settlement directly benefit plaintiff. As such, plaintiff is a prevailing party within the meaning of § 1988.[6]

### B. Calculation of the Lodestar Figure

As already discussed, the proper first step in determining a fee award for a prevailing party is to calculate the lodestar amount by multiplying "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Del. Valley Citizens' Council for Clean Air,* 478 U.S. at 564, 106 S.Ct. 3088. Plaintiff is seeking an award of attorneys fees in the amount of $132,938.50, and expenses in the amount of $13,968.06. In calculating these figures, plaintiff has excluded certain charges in a good faith application of the "billing judgment" required under the applicable precedents. Specifically, plaintiff has excluded charges for travel time, an unsuccessful motion to join other firefighters as co-plaintiffs, and half of the time spent in preparing the fee petition and rebuttal. (Pl.'s Reply at 16 n. 15.) Plaintiff's counsel have also indicated that they do not intend to petition for fees in a related case, *Triplett v. City of Suffolk,* No. 2:04cv86. (*Id.*)

Plaintiff's fee petition is properly supported with affidavit evidence regarding the reasonableness of the hourly rates sought in light of the nature of this litigation, the customary fees in this market, and the experience, reputation, and abilities of plaintiff's counsel. (Pl.'s Pet. Ex. H.) Defendants do not contest the reasonableness of the hourly rates sought (Defs.' Br. in Opp. at 11), and instead challenge only the number of hours expended.

Defendants argue generally that the 528.8 hours expended by plaintiff's counsel are excessive given that defendants' counsel expended only 343.4 hours on this suit.[7] More specifically, defendants target three areas of plaintiff's claimed hours as excessive and unreasonable: (1) time expended on client consultations; (2) time expended in discovery; and (3) time expended on a second motion for summary judgment. Having reviewed the parties' submissions and the record as a whole, the court agrees that part of the time claimed by plaintiff is appropriately excluded from a reasonable fee.

### 1. Hours Claimed for Client Communications

Defendants note that the records of plaintiff's primary attorney, Thomas A. Woodley, indicate "communications with the plaintiff by telephone, email and/or correspondence on at least sixty different dates, including numerous communications regarding 'strategy.'" (Juren Aff. ¶ 5.) Defendants argue that given the limited number of core facts relevant to plaintiff's legal claims, the extent of these communi-

---

6. In addition to the factors already cited, the court notes that in essentially brokering the settlement between these parties, Judge Bradberry repeatedly expressed his belief that plaintiff was a prevailing party entitled to a reasonable attorneys fee. *See supra* note 2.

7. "[G]eneral grousing" about the hours claimed by a prevailing party is not an effective substitute for identifying particular time entries, or groups of entries, which are believed to be excessive. *See Saleh v. Moore,* 95 F.Supp.2d 555, 569 (E.D.Va.2000) (Payne, J.).

cations is excessive. (*Id.*) Plaintiff's rebuttal brief does not specifically address the issue of client communications.

■ An attorney's "commitment to work closely with his client is certainly laudable ... and attorney time reasonably spent with clients in preparing a case should be part of the hours compensated in an attorney's fee award." *Daly v. Hill*, 790 F.2d 1071, 1079 (4th Cir.1986). The burden of proving entitlement to compensation for client communications, however, rests with the prevailing attorneys. *Id.* In circumstances where a fee petition makes numerous claims for client communications, but does not "illuminate the way in which the many hours of client conferences may have aided ... preparation of the case," the court may properly exclude some hours as excessive. *Id.*

Based on the record before the court, it is unclear why as many as sixty client communications would have been necessary in this case, and the court finds that plaintiff's counsel have not borne their burden of establishing the reasonableness of the hours claimed. Because the time records submitted by plaintiff do not isolate the hours claimed for client communications, an approximation is required to determine the proper number of hours excluded. Assuming that one-half, or thirty, of the client communications claimed are not within the scope of a reasonable fee, and that the average communication lasted 0.5 hours, the court finds that the exclusion of 15.0 hours is sufficient to correct this claim. Accordingly, the court excludes from the lodestar figure 15.0 hours billed at $250 per hour,[8] or $3,750.00.

### 2. Hours Expended in Discovery

■ Defendants challenge as unreasonable the hours devoted to discovery. Specifically, defendants argue that it was unnecessary for plaintiff to depose all of the witnesses identified in defendants' initial disclosures. Defendants cite the depositions of former City Manager Myles Standish, Councilman Leroy Bennett, Assistant City Manager James Vacalis, and Assistant Human Resources Director Jessica Stallings as ones which plaintiff should have known were unlikely to involve probative information. (Defs.' Br. in Opp. at 12–13.)

In response, plaintiff notes that with one exception, the city representatives deposed were identified by defendants as individuals having discoverable information and possible witnesses at trial. (Pl.'s Reply at 13 n. 10; *id.* Ex. 5.) The only individual not so identified was Councilman Bennett. A review of plaintiff's time records shows that Councilman Bennett and three other city representatives were deposed on December 8, 2003, and that plaintiff's counsel have claimed 9.3 hours for the four depositions. (Pl.'s Pet. Ex. A at 9.) Plaintiff's counsel claim a total of 4.7 hours on December 5, 2003, and December 7, 2003, in preparation for the four depositions taken December 8, 2003. (*Id.*)

Under these circumstances, the time claimed by plaintiff for the challenged depositions is reasonable. It is generally reasonable to depose a potential trial witness, and the records before the court reflect that plaintiff's counsel made efforts to conduct depositions in a time-efficient manner. Certainly 14.0 hours is not an unreasonable total for preparing and taking four depositions.[9] Accordingly, the

---

**8.** Attorney Woodley claims an hourly rate of $250.00 for work performed in 2003 and 2004. (Pl.'s Pet. Ex. E.)

**9.** Former City Manager Standish was not deposed with the group of four on December 8, 2003, but separately on January 22, 2004. Preparing and taking Standish's deposition

court does not find reason to exclude any hours claimed for depositions.

### 3. Time Expended on a Second Motion for Summary Judgment

Defendants raise two arguments in regard to the hours claimed for plaintiff's second motion for partial summary judgment, filed February 6, 2004. First, defendants assert that the utility of a second summary judgment motion in this case was questionable, and that it is unreasonable to claim any time expended on that motion. (Defs.' Br. in Opp. at 13.) Second, and more specifically, defendants argue that the hours billed by plaintiff's counsel Douglas L. Steele in preparation for a hearing on the second summary judgment motion were excessive. (*Id.*)

█ Defendants' first argument is unpersuasive. Plaintiff's initial motion for summary judgment came in response to defendants' motion to dismiss, and was made prior to discovery in this case. Under the circumstances presented, it was not unreasonable for plaintiff to file a second motion for summary judgment after discovery had been completed.

Defendants' second argument, however, rests on firmer ground. Attorney Steele had the principal role in representing plaintiff at the summary judgment hearings on March 10, 2004, and March 17, 2004, and also had primary responsibility for making certain pretrial preparations. (Woodley Aff. ¶ 7, at 4.) For the period of March 4, 2004, through March 18, 2004, Attorney Steele claims 90.4 hours.

█ Defendants challenge this amount as excessive, arguing that because all briefs on the second motion for summary judgment had already been filed, "[a]ll that

was necessary at that point to prepare for the hearings was to review the previously filed papers and prepare for argument." (Defs.' Br. in Opp. at 14.) It is not clear from plaintiff's submissions how many of the 90.4 hours claimed by Attorney Steele were specifically devoted to preparation for the summary judgment hearing, and how many were devoted to pretrial matters. (*See* Pl.'s Pet. Ex. B.) Defendants estimate that 35–45 of the 90.4 hours were spent preparing for the summary judgment hearing. (Juren Aff. ¶ 7, at 5.)

Upon review of Attorney Steele's time records, it appears that approximately 40.0 of the 90.4 hours claimed during this period involved preparation for the summary judgment hearing. The court agrees with defendants that this time is excessive. Attorney Steele is a knowledgeable and experienced practitioner, and the relevant legal issues had been effectively clarified in the parties' briefs. Under these circumstances, the court finds that one-half of the time, which is 20.0 hours, properly captures a reasonable fee for preparation for the hearing. While the court does not fault Attorney Steele for expending more than 20.0 hours in so preparing (and indeed appreciates his diligence), it is nonetheless appropriate to exclude from the lodestar figure 20.0 hours billed at $225 per hour, or $4,500.00.

### C. Reduction from the Lodestar Figure for Limited Success

█ Both the Supreme Court and the Fourth Circuit have acknowledged the district court's discretion to depart from the lodestar when an award of that figure would be excessive in light of a plaintiff's limited success. *Hensley v. Eckerhart,*

---

consumed some portion of the 13.9 hours claimed by plaintiff's counsel for January 20–22, 2004. (Pl.'s Pet. Ex. A at 10.) Based on

the record before it, the court finds this time expenditure to be reasonable.

461 U.S. 424, 436–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *McDonnell v. Miller Oil Co.*, 134 F.3d 638, 641 (4th Cir.1998); *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir.1995). Because the degree of success obtained by the plaintiff is the "most critical factor" in determining the reasonableness of a fee award, the district court "may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933.

Defendants suggest that any award of fees should be "dramatically reduced," arguing that because the settlement reached did not require the withdrawal of the September 2002 memorandum, plaintiff's success was *de minimus*. (Defs.' Br. in Opp. at 9–10.) For the reasons discussed *supra* Part III.A, the court rejects this characterization, and finds that the relief afforded to plaintiff through this settlement is quite meaningful, not inconsequential.

Despite the significance of the relief achieved, however, it is clear that plaintiff's success in this litigation is less than total. Plaintiff initially sought a declaration of constitutional violations, an injunction of the September 2002 memorandum, and both compensatory and punitive damages. (*See* Compl. at 11.) Defendants opposed all relief and any change to then-existing fire department policy. In settling this case, the parties and the Magistrate Judge charted a course in which a determination of constitutional rights became unnecessary, plaintiff voluntarily dropped all claims for damages, and a new, governing policy was implemented to protect and promote the constitutional rights of Suffolk firefighters. Plainly, the settlement reached reflects substantial movement by both parties from their long-entrenched positions.

The court finds it appropriate to depart from the lodestar figure to properly account for this type of compromise relief. *See Thomas S. v. Burke County Bd. of Educ.*, 1987 U.S. Dist. LEXIS 10763, *5–8 (S.D.Ga.1987) (adjusting attorneys fees to reflect compromise relief).[10] In so doing, the court applies "a rough sense of equity" to its knowledge of this litigation. *Id.* at *8. In calculating a proper lodestar figure, the court excluded $8,250.00 from the requested $132,938.50, *see supra* Part III.B.1 & III.B.3, leaving a fee amount of $124,688.50. Considering both the relief sought and the relief obtained in this case, the court finds that a forty percent reduction in the lodestar amount is appropriate to account for plaintiff's partial success. Accordingly, the fee award is reduced from $124,688.50 to $74,813.10.

### D. Litigation Expenses

A prevailing plaintiff is entitled under § 1988 to reasonable litigation expenses. *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir.1988); *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir.1986). Here, plaintiff has documented expenses in the amount of $13,968.06. Having reviewed this documentation, the court finds the full amount to be reasonable and compensable under § 1988.

### IV. Conclusion

For the reasons set forth above, the court **GRANTS** petitioner's motion and **AWARDS** attorneys fees in the amount of $74,813.10 and litigation expenses in the amount of $13,968.06, with interest on this award to be computed as in 28 U.S.C. § 1961, and to accrue from the date of

---

**10.** It is clear from various statements at the March 17, 2004, hearing that Judge Bradberry also held the view that plaintiff's success was partial, and accordingly merited a partial fee award. *See supra* note 3.

judgment. The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**