KAREN LeCRAFT HENDERSON, Circuit Judge,
concurring:
It is a time-honored bargaining tactic: make an unreasonable opening offer in an effort to “anchor” the ensuing give-and-take to an artificially high (or low) range of prices. Russell Korobkin, Aspirations and Settlement, 88 Cornell L. Rev. 1, 32 (2002). Even if the offer has no basis in reality and is rejected out of hand, it may for psychological reasons yield an artificially high (or low) final price. Id. at 32 & nn.151-53 (citing evidence that people “often begin [a negotiation] with a reference value ... and then adjust from that point to arrive at their final determination,” even if starting point does “not bear a rational relationship to the item subject to valuation”). That may be fine for selling a car or conducting a business negotiation. But a request for attorney’s fees is not a negotiation.
Federal fee-shifting statutes typically authorize the recovery of a reasonable attorney’s fee. If a party seeks more than that—making an excessive demand in hopes that the award, although short of the demand, will be artificially high—a district court can impose a sanction to deter future violations and to protect the integrity of its proceedings. In particular, the court has discretion to deny an award altogether or “impose a lesser sanction, such as awarding a fee below what a ‘reasonable’ fee would have been.” Envtl. Defense Fund, Inc. v. Reilly, 1 F.3d 1254, 1258 (D.C. Cir. 1993).
I say all this because Radi Dennis, counsel for plaintiff Demetra Baylor, made what I consider a grossly excessive fee request. In Baylor’s name, Dennis sought *955 a total of $221,155 for her work on Baylor’s $1,001 settlement and on the fee request itself.[1] The $221,155 demand was more than five times the $41,990 that a magistrate judge determined to be reasonable. Reviewing for clear error, the district court overruled objections from both sides and awarded Baylor $41,990. The Court today holds, and I agree, that a remand is in order because the district court erred by not reviewing the magistrate’s recommendation de novo.[2] Maj. Op. 942-43, 944-47, 954. The Court is careful not to dictate the outcome on remand, Maj. Op. 942-43, 947, and rightly so because of the district court’s discretion in fee matters, Copeland v. Marshall, 641 F.2d 880, 901 (D.C. Cir. 1980) (en banc). I write separately only because, on reviewing the fee order, I am uncertain whether the district court recognizes just how broad its discretion is. On the extreme facts of this case—and because Dennis is a repeat offender, see Jones v. Dufek, 830 F.3d 523, 529 & n.6 (D.C. Cir. 2016) (affirming denial of excessive fee request Dennis made on behalf of another client)—I believe the court’s discretion includes awarding a fee substantially below an otherwise reasonable one.
I. BACKGROUND
The Court details many of the facts, Maj. Op. 943-45, but I recount a few more to provide context for Baylor’s fee request.
A. Dennis’s Work On The FDCPA Claim And Fee Request
Baylor attended graduate school, which she financed with student loans. Through an intermediary, one of Baylor’s creditors enlisted defendant Mitchell Rubenstein & Associates (MRA), a law firm, to collect on the debt. In February 2013, MRA sent Baylor the first of several letters about the debt. The letters contained minor inadvertent discrepancies about (inter alia) the amount Baylor owed. See Maj. Op. 943-44. In March 2013, Baylor disputed the debt and retained Dennis for $325 per hour on a contingency basis. See Decl. of Radi Dennis ¶ 14 (Mar. 12, 2014).
Dennis almost immediately began researching the viability of a claim under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 et seq. According to her billing records, she performed about 30 hours of FDCPA research between April and December 2013. During the same period, she had unfruitful settlement discussions with MRA.
Dennis spent about 56 hours researching, drafting, editing and serving Baylor’s complaint against MRA. The complaint— 15 pages long and filed in December 2013—alleged that MRA had violated the FDCPA and District of Columbia (D.C.) law. Eight pages of the complaint were devoted to factual allegations and other matters common to all counts. Four pages set forth Baylor’s D.C. claims, which were ultimately unsuccessful. Only three pages were dedicated exclusively to Baylor’s FDCPA claim.
MRA’s president authorized a $1,001 offer of judgment on the FDCPA claim in order “to limit the time and expense of litigation.”[3] Aff. of Mitchell Rubenstein ¶ 18 (Mar. 25, 2014); see Fed. R. Crv. P. 68 *956 (“Offer of Judgment”). MRA’s counsel extended the offer to Dennis by certified mail on January 7, 2014. The offer reached Dennis’s address on January 17 but she waited until January 29 to open and read it.
In the meantime, on January 14, 2014, MRA moved to dismiss all counts of the complaint. Between January 18 and January 27—a ten-day period during which she should have known that MRA had offered to settle the FDCPA claim—Dennis wasted more than 87 hours researching and drafting Baylor’s opposition to the motion to dismiss. She filed the opposition on January 27.
Dennis finally retrieved the offer of judgment on January 29, 2014. In the two weeks that followed, she spent about 34 hours researching Rule 68. Baylor accepted MRA’s offer on February 28. The judgment was for $1,001 “plus costs and expenses together with reasonable attorney fees for all claims under the Fair Debt Collection Practices Act.” J. on Offer and Acceptance (Feb. 28, 2014). The reference to “reasonable attorney fees” accorded with the FDCPA’s fee-shifting provision, which states in relevant part that, “in the case of any successful [FDCPA] action,” a debt collector who has violated the FDCPA “is liable” to the plaintiff for “the costs of the action, together with a reasonable attorney’s fee as determined by the court.” 15 U.S.C. § 1692k(a)(3).
In Baylor’s name, Dennis sought a “lodestar”[4] fee award of $155,700 for her work on the FDCPA claim and on the fee request itself.[5] She based the amount on two assertions: (1) she had spent a total of 346 hours litigating the FDCPA claim and fee motion, including at least 85 hours on the latter; and (2) her rate under the “Laf-fey Matrix”[6] is $450 per hour. She subsequently sought another $40,075 for drafting Baylor’s reply to MRA’s opposition to the fee motion,[7] bringing the tally to $195,775. And then she sought another $25,380 for 56 hours she allegedly spent responding (and seeking fees on the response) to MRA’s five-page motion for sanctions and relief from judgment—a motion the district court denied in a three-page order. In all, then, Dennis sought $221,155 in fees.[8]
*957 MRA opposed the fee request, urging the district court to deny it in toto because it was grossly exaggerated.
B. The District Court’s Fee Order
The district court referred the fee request to a magistrate judge, who recommended awarding a fee but reducing the total to a reasonable amount: $41,990. Reviewing for clear error, the district court overruled both parties’ objections to the magistrate’s report and recommendation. 77 F.Supp.3d 113, 117-23 (D.D.C. 2015). The court adopted the report and recommendation and thus awarded $41,990, which it considered “quite generous.” Id. at 121; see id. at 115,124.
In rejecting Baylor’s claim for a larger award, the district court deferred to the magistrate judge’s view that a “reasonable attorney” in Dennis’s shoes would have spent about 93 hours on the FDCPA claim and the fee request. 77 F.Supp.3d at 121. The court saw no clear error in the magistrate’s conclusion that Dennis’s time beyond 93 hours was (1) attributable to Baylor’s D.C. claims, id. at 121-22 & n.6, and (2) “wasteful” and “unnecessary” because (inter alia) Dennis failed to timely retrieve MRA’s offer of judgment, id. at 121-23 & n.5.
In rejecting MRA’s entreaty to award nothing, the district court acknowledged cases permitting it to “reject! ] an award outright” because of an “outrageous” request. 77 F.Supp.3d at 118. Elsewhere the court remarked on the fact that Dennis “sought more than $220,000 in fees for a successful FDCPA claim worth only $1,001.00 to her client.” Id. at 122. But the court discerned no clear error in the magistrate judge’s recommendation against a sanction. Id. at 118-19. Because a fee award under the FDCPA “is mandatory in all but the most unusual circumstances,” the court was reluctant to deny the fee request in its entirety. Id. at 119 (quoting Carroll v. Wolpoff & Abramson, 53 F.3d 626, 628 (4th Cir. 1995)). And in light of the already “significant reduction” to $41,-990—a reduction the magistrate judge deemed necessary to make the award reasonable—the court was unpersuaded that any punitive reduction was necessary. Id.
Both sides appealed. Baylor claims the award is too low and MRA claims it is too high.
II. ANALYSIS
We and other courts of appeals have held, in several different statutory contexts, that a court may punish an intolerably excessive fee-request by denying any award at all. See, e.g., Envtl. Defense Fund, Inc. v. Reilly, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (Resource Conservation and Recovery Act, 42 U.S.C. § 6972(e)); Jordan v. Dep’t of Justice, 691 F.2d 514, 518 & n.37 (D.C. Cir. 1982) (Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E)); see also, e.g., Scham v. District Courts Trying Criminal Cases, 148 F.3d 554, 556-59 (5th Cir. 1998) (Civil Rights Attorney’s Fees Awards Act, 42 U.S.C. § 1988(b)), abrogated on other grounds as noted in Bailey v. Mississippi, 407 F.3d 684, 686-87 (5th Cir. 2005); Fair Hous. Council v. Landow, 999 F.2d 92, 96-98 (4th Cir. 1993) (same); Lewis v. Kendrick, 944 F.2d 949, 958 (1st Cir. 1991) (same); Brown v. Stacker, 612 F.2d 1057, 1059 (7th Cir. 1980) (same). We have also recognized the authority to “impose a lesser sanction, such as awarding a fee below what a ‘reasonable’ fee would have been in order to discourage fee petitioners from submitting an excessive request.” Reilly, 1 F.3d at 1258.
The district court was hesitant to deny Baylor’s fee request in toto because the FDCPA provides for mandatory fee shifting. 77 F.Supp.3d at 119. The concern is understandable but goes only so far. True, the cases listed above involved statutes *958 under which a court “may” award a fee, 5 U.S.C. § 552(a)(4)(E); 42 U.S.C. §§ 1988(b), 6972(e), whereas the FDCPA provides that a defendant “is liable” for a fee, 15 U.S.C. § 1692k(a). But at least two courts of appeals have suggested the FDCPA permits outright denial in “unusual circumstances.” Carroll, 53 F.3d at 628 (4th Cir.); Graziano v. Harrison, 950 F.2d 107, 114 & n.13 (3d Cir. 1991). And even assuming arguendo that some “reasonable” fee is always required, 15 U.S.C. § 1692k(a)(3), the statutory text does not preclude a court from deciding—consistent with its inherent authority to protect the integrity of its proceedings, Chambers v. NASCO, Inc., 501 U.S. 32, 42-51, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)—that a “reasonable” fee in response to an exorbitant request is a nominal amount approaching zero.
I do not dispute that, if one leaves aside the magnitude of the fee request, $41,990 is reasonable—or at least represents a non-reversible determination of reasonableness within the district court’s broad discretion. See Morgan v. District of Columbia, 824 F.2d 1049, 1066 (D.C. Cir. 1987) (“[W]e are ill-positioned to second guess the [district] court’s [fee] determination.”). Nor do I contend that the court must exercise its discretion to reduce the award for punitive reasons. But in deciding whether or not to do so, the court must start with the correct legal baseline. See Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (“A district court by definition abuses its discretion when it makes an error of law.”). I am not sure the court started with the correct baseline here.
The district court suggested that, in light of the already “significant reduction” to $41,990, it did not need to reduce the award further as a sanction. 77 F.Supp.3d at 119. But the question is not whether an award of $11,990 is grossly excessive; it is whether a request of $221,155 is grossly excessive given that a reasonable fee is $41,990. After all, the point is to deter unreasonable requests-.
If ... the Court were required to. award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful, and the District Court responded appropriately in [denying an award entirely].
Brown, 612 F.2d at 1059; see Reilly, 1 F.3d at 1258 (approving Brown’s rationale in our Circuit); Landow, 999 F.2d at 98 (forbidding “gamesmanship” of filing excessive request “in the hope that the district court [will] at least award some, preferably high, percentage of the requested fees”); Lewis, 944 F.2d at 958 (emphasizing that fee request is “not an opening gambit in negotiations to reach an ultimate result”).
None of this is to say that denial or reduction of fees is routine punishment. As the Court explained in Jordan:
Total denial of requested fees as a purely prophylactic measure ... is a stringent sanction, to be reserved for only the most severe of situations, and appropriately invoked only in very limited circumstances. Outright denial may be justified when the party seeking fees declines to proffer any substantiation in the form of affidavits, timesheets or the like, or when the application is grossly and intolerably exaggerated, or manifestly filed in bad faith.
691 F.2d at 518 (footnotes omitted). Still, the sanction is not as rare as hen’s teeth. In several of the cases cited above, a fee was denied or reduced as punishment for a grossly excessive request. Reilly, 1 F.3d at *959 1258-60; Scham, 148 F.3d at 556-59; Landow, 999 F.2d at 96-98; Lewis, 944 F.2d at 954-58; Brown, 612 F.2d at 1059. In Reilly, for example, this Court reduced a fee request for “outrageously excessive time entries,” noting especially that the attorney had tried to claim hours that were “about three times what the work should have required.” 1 F.3d at 1259-60. Likewise in Landow, the Fourth Circuit reversed a fee award in its entirety because the request on which it was based was “outrageously excessive” insofar as it did not carve out hours spent on unsuccessful claims. 999 F.2d at 97-98. And in Lewis the First Circuit reversed an award because the lawyers’ fee request was intolerably out of sync with the “degree of success [they] obtained” for their client. 944 F.2d at 956, 958 (internal quotation omitted).
The sanction may be “strong medicine,” Lewis, 944 F.2d at 958; see Jordan, 691 F.2d at 518, but an equally strong case can be made for it here. The record suggests that Dennis, desiring an artificially large award, impermissibly treated the $221,155 fee request as an opening bid. Compare Reilly, 1 F.3d at 1258; Landow, 999 F.2d at 97-98; Lewis, 944 F.2d at 958; Brown, 612 F.2d at 1059; see also Korobkin, Aspirations and Settlement, 88 Cornell L. Rev. at 32-33. The hours she reported are difficult to explain any other way. She reported the 87 hours she had spent opposing MRA’s motion to dismiss. She claimed those hours even after realizing they had been wasted because she did not timely open her mail.[9] She claimed 34 hours for researching Rule 68 when a few hours should have sufficed. She claimed at least 85 hours for the fee motion itself. She claimed 110 hours—nearly three standard work weeks at a total “discount” price of $40,075—for replying to MRA’s opposition to the fee motion. And she claimed 56 hours for responding (and seeking fees on the response) to MRA’s five-page motion for sanctions.
Through Baylor, Dennis sought more than five times the amount the magistrate judge thought reasonable and the district court thought “quite generous.” 77 F.Supp.3d at 121; see id. at 124. In Reilly we cut back a request because (inter alia) the lawyer tried to claim hours that were “about three times what the work should have required.” 1 F.3d at 1259. A fortiori, that case counsels a similar result here.
Moreover, Dennis sought nearly 221 times the $1,001 she recovered for Baylor. The client’s “degree of success” is ordinarily a “critical factor” in calculating a fee award. Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); see Goos v. Nat’l Ass’n of Realtors, 68 F.3d 1380, 1387 (D.C. Cir. 1995). The First Circuit in Lewis believed it “inexcusable” that the lawyers there sought “payment ... amounting to 140 times the worth of the injury.” 944 F.2d at 956.1 believe the same conclusion is warranted here. Dennis spent more time working on fee matters than on tasks essential to Baylor’s FDCPA claim. The time she spent on the fee motion (at least 85 hours) and the reply to MRA’s fee opposition (110 hours) easily exceeded the time she spent researching the FDCPA (30 hours) and working on Baylor’s complaint (56 hours)—the latter of which was .devoted in part to D.C. claims that Baylor lost. See Landow, 999 F.2d at 97-98 (fee request excessive because it did not discount work on unsuccessful claims). No wonder the district court said of the fee request that “the tail [is] wagging the dog ... in this case.” 130 F.Supp.3d 326, 337 (D.D.C. 2015).
*960 In short, Dennis lost sight of the real party in interest. As further proof, recall that she sought the Laffey rate of $450 per hour despite having agreed to represent Baylor for $325 per hour. Dennis has not explained the discrepancy, at least not in this Court. Nor can the FDCPA support such a windfall. The fee-shifting provision states that the defendant is liable to the plaintiff for a reasonable attorney’s fee. 15 U.S.C. § 1692k(a) (“[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person....” (emphasis added)). In other words, the district court is to award Baylor whatever the FDCPA litigation reasonably cost her. And Baylor’s contingency agreement with Dennis manifests that, at least for the latter’s services, the litigation cost her $825 per hour. See Decl. of Radi Dennis ¶ 14 (Mar. 12, 2014). The extra $125 per hour—a good living for most people—is nothing but avarice.
Importantly, such excess in a fee request is not victimless: the money has to come from someone. Here the money comes from MRA. 15 U.S.C. § 1692k(a) (“debt collector ... is liable”). Yes, MRA owes damages, costs and a reasonable attorney’s fee. But by law that is all it owes. Assuming $41,990 is a reasonable attorney’s fee,[10] Dennis improperly demanded $179,165 of MRA’s money. Thankfully, the tactic did not succeed. If similar demands become the norm, however, they will sow distrust and spawn satellite fee litigation— one of the last things lawyers and judges should be spending their time on. See Carroll, 53 F.3d at 628 (noting “systemic costs” of satellite fee litigation, which is “one of the least socially productive types of litigation imaginable” (internal quotation omitted)). For fee-shifting to work properly, a court must be able to depend on counsel for a measured accounting from the outset. Dennis’s accounting was nowise measured.
In the event the district court concludes on remand that the fee request was grossly excessive, such that the award needs to be further reduced, the following considerations may aid its calculation. First, for reasons already explained, I think the court should award $325 per hour instead of $450. Second, I think the court may deny Dennis any credit for fee-related pleadings. See Trichilo v. Sec’y of HHS, 823 F.2d 702, 708 (2d Cir. 1987) (“If counsel makes inflated or outrageous fee demands, the court could readily deny compensation for time spent in pressing them, since that time would not have been reasonably spent.” (internal quotation omitted)). Indeed, I do not think it would be an abuse of discretion to award Dennis the same amount she won for Baylor: $1,001. Steep overbilling ought to come at a steep price.

. For simplicity, I round all monetary figures to the nearest dollar and all increments of time to the nearest hour.

. I also agree that the district court correctly disposed of Baylor’s claims under District of Columbia law. Maj. Op. 947-54. Accordingly, I join the Court's opinion in full.

.It did not have the intended effect. See generally Maj. Op. 942-54; 174 F.Supp.3d 146 (D.D.C. 2016); 130 F.Supp.3d 326 (D.D.C. 2015); 77 F.Supp.3d 113 (D.D.C. 2015); 55 F.Supp.3d 43 (D.D.C. 2014).

. The "lodestar” method of calculating a fee award "looks to the prevailing market rates in the relevant community.” Perdue v. Kenny A., 559 U.S. 542, 551, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010) (internal quotation omitted). It is meant to "produce[] an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.” Id. (emphasis omitted).

. Because Baylor did not succeed on her D.C. claims, she could not seek a fee award on them. See Brandywine Apartments, LLC v. McCaster, 964 A.2d 162, 169 (D.C. 2009) ("successful” claim required).

. The Laffey Matrix provides a "schedule of prevailing rates” for attorneys who litigate in the D.C. area. Eley v. District of Columbia, 793 F.3d 97, 100-01 (D.C. Cir. 2015).

. Dennis said she had spent more than 110 hours on the reply but was willing to give MRA a "discount.” Supplemental Deck of Radi Dennis ¶ 6(f) (Apr. 1, 2014).

. The $221,155 does not include an additional $48,195 that Dennis sought for preparing objections to the magistrate judge’s report and recommendation on the fee award. The district court concluded that the additional $48,195 was too attenuated from the FDCPA claim to be reimbursable. Baylor does not appeal that ruling and MRA does not argue that the additional $48,195 is relevant to whether the earlier request was outrageously excessive. I therefore use $221,155 as an extremely conservative figure for the total fee request.

. It is one thing to make a mistake. It is quite another to bill it to someone else, especially when it costs $39,150 (87 x $450).

. Lest it be forgotten, I repeat here that Dennis believes $41,990 is unreasonably low. Br. of Appellant 22-48. I have my doubts but acknowledge that the matter is for the district court. Morgan, 824 F.2d at 1066. The court may conclude on de novo review of the magistrate judge's report and recommendation that a reasonable fee is higher or lower than $41,990. If it does so, the new number will become the baseline from which the court must decide whether Dennis’s request of $221,155 was grossly excessive.