Concurring opinion filed by Circuit Judge HENDERSON.
EDWARDS, Senior Circuit Judge:
In order to pursue a Master’s degree in Computer Graphics, Demetra Baylor (“Appellant”) took out six student loans, Several years after her graduation, Mitchell Ru-benstein & Associates, P.C. (“Appellee”) came calling to collect. At the heart of this case are a number of inconsistencies in letters that Appellee sent Appellant over the course of several months regarding her loans and the amounts that she owed on them, as well as Appellee’s failure to direct all of its communications to Appellant’s attorney after she retained counsel. In response, Appellant filed suit on December 17, 2013, alleging that Appellee had violated the Fair Debt Collection Practices Act (“FDCPA”), the District of Columbia Consumer Protections Procedures Act (“CPPA”), and the District of Columbia Debt Collection Law (“DCDCL”), statutes which target abusive debt collection and improper trade practices. See 15 U.S.C. § 1692(e); D.C. Code §§ 28-3904, -3814.
Over the course of the next few years, 'the parties engaged in what the District Court termed a “particularly striking expenditure of effort and resources,” generating “excessive, repetitive, and unnecessarily sharp pleadings.” Order, Dkt. No. 41, at 2. Nonetheless, all of Appellant’s statutory claims were eventually resolved. Appellant accepted Appellee’s offer of judgment regarding her FDCPA claim and the District Court, with the aid of a Magistrate Judge, determined the attorney’s fees to which she was entitled for this success. Appellee, meanwhile, prevailed in its Motion to Dismiss all of Appellant’s CPPA claims and some of her DCDCL claims, the remainder of which were rejected when the District Court subsequently granted Appellee’s Motion for Summary Judgment.
A number of orders from this “clutter[ed] ... docket” are challenged on appeal. Id. First, the parties dispute the District Court’s decision to adopt a Magistrate Judge’s recommendation that Appellant receive approximately twenty percent of the attorney’s fees that she requested. Second, Appellant asserts that the District Court erred in finding that Appellee’s conduct does not fall within the aegis of the CPPA. Third, Appellant also contends that the District Court abused its discretion in failing to credit her objections to a different Magistrate Judge’s denial of her Motion to Compel the disclosure of communications between Appellee and an agent of Appellant’s creditor on the grounds that these documents were protected by attorney-client privilege. Appellant additionally disputes the District Court’s refusal to award her attorney’s fees for her efforts in litigating this issue. Finally, Appellant argues that the District Court improperly granted Appellee’s Motion for Summary Judgment on her DCDCL claims. On this last point, Appellant contends that the District Court failed to appropriately account for evidence demonstrating that Appellee had “willfully violated” the DCDCL and was therefore subject to liability under the statute.
We do not reach the question of whether the District Court abused its discretion in awarding Appellant only a percentage of *943 the attorney’s fees she sought in connection with her FDCPA claim. In addressing this issue, the District Court relied on the standard set forth in Local Civil Rule 72.2 in finding that the Magistrate Judge’s proposed disposition was not “clearly erroneous or contrary to law.” This was error. Federal Rules of Civil Procedure 54(d)(2)(D) and 72(b)(3) foreclose the District Court from using a “clearly erroneous or contrary to law” standard when evaluating a Magistrate Judge’s proposed disposition of a fee request. The correct standard of review is de novo. We therefore reverse and remand to allow the trial judge to reconsider this matter in the first instance applying de novo review to assess the Magistrate Judge’s recommendation. We affirm all of the remaining Orders challenged on appeal.
I. BACKGROUND
On February 21, 2013, Appellee, a law firm whose primary focus is the recovery of consumer debts, sent the first of several letters to Appellant notifying her that her account, which had been assigned file number R80465, “ha[d] been referred to [its] office for collection.” Complaint, Dkt. No. 1, Ex. E; see Answer, Dkt. No. 28, at 2. It listed the creditor for her debt as Arro-wood Indemnity Company and stated that she currently owed $26,471.07, though cautioned that, “[bjecause of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater.” Complaint, Dkt. No. 1, Ex. E. Following a request for more information regarding both the ownership and amount of this debt from Appellant, Appellee sent a second letter. It provided a new total for the amount that Appellant owed, $31,268, a slight reformulation of the name of Appellant’s creditor, Arrowood Indemnity Company/Tuition Guard, and identified her original creditor as Citibank (South Dakota) N.A. Complaint, Dkt. No. 1, Ex. D; Baylor v. Mitchell Rubenstein & Assocs., P.C., 55 F.Supp.3d 43, 46 (D.D.C. 2014).
Appellant retained counsel, who contacted Appellee regarding the provenance of this debt and advised that any “future communication regarding this matter should be directed to [her] firm” rather than to Appellant. Complaint, Dkt. No. 1, Ex. B. The parties then entered into settlement negotiations, during which Appellant informed Appellee that she had additional outstanding loans not referenced in its second letter. Appellee’s client referred these new loans to Appellee so that Appellant could settle all of her debt at once. See Baylor v. Mitchell Rubenstein & Assocs., P.C., 174 F.Supp.3d 146, 150 (D.D.C. 2016); Appellee’s Statement of Undisputed Facts, Dkt. No. 96 ¶¶ 12-13. On August 22, 2013, Appellee sent another letter to Appellant’s home, albeit addressed to her attorney, regarding this second set of loans. Complaint, Dkt. No. 1, Ex. A. It provided a new file number for this debt, R83798, which totaled $27,459.48, and noted that her creditor was Tuitionguard Arrowood Indemnity; Id. After Appellant’s counsel requested additional information regarding these loans, Appellee stated that Appellant owed “$27,459.48 plus interest from 10/21/11 at the rate of 3.75% until paid” and listed Tuitionguard/Arrowood Indemnity and Student Loan Corp. as the creditor and original creditor, respectively, of this debt. Complaint, Dkt. No. 1, Ex. C.
On December 17, 2013, Appellant filed suit in the District Court. She claimed that the inconsistencies in the communications she had received from Appellee, including, most notably, the variance in the “character and amount” of Appellant’s alleged debt and the creditors associated with these loans, as well as Appellee’s failure to direct all of its communications to Appellant’s counsel after she had retained legal representation, constituted violations of *944 both the FDCPA and CPPA. Complaint, Joint Appendix (“JA”) 26-28, 31-33. She also asserted that these actions were proof that Appellee had both violated various provisions of the DCDCL and “knowingly maintained policies, practices and procedures that were intentionally and willfully inadequate” to meet its obligations under this statute. Id. at 29-31.
Appellee moved to dismiss the Complaint. However, while this motion was pending, Appellee extended, and Appellant accepted, an offer of judgment regarding her FDCPA claims. See Baylor v. Mitchell Rubenstein & Assocs., P.C., 77 F.Supp.3d 113, 115 (D.D.C. 2015). A judgment was then entered “in the amount of $1,001.00 plus costs and expenses together with reasonable attorney fees for all claims under the [FDCPA] ” by the Clerk of Court. Id. Appellant thereafter filed a motion seeking $155,700 in attorney’s fees for 346 hours of work at a rate of $450 an hour. Id. She was later permitted to amend her requested fees due to subsequent filings in this case. Id. at 115-16.
The District Court referred this request to a Magistrate Judge pursuant to Local Civil Rule 72.2. After reviewing the matter, the Magistrate Judge recommended that the hours included in Appellant’s initial fee request be reduced by 85% because they were significantly higher than reasonable. Baylor v. Mitchell Rubenstein & Assocs., P.C., 2014 WL 7014280, at *4 (D.D.C. Oct. 24, 2014). She found that certain tasks were not eligible for attorney’s fees under the statute; some of the hours requested were expended on Appellant’s unsuccessful state law claims or occurred after Appellant had already accepted Appellee’s offer of judgment; and Appellant’s counsel had failed to “heed the Court’s admonition” to moderate the tenor of her filings. Id. at *4-5. The Magistrate Judge also determined that a 50% reduction should be applied to Appellant’s additional request for fees because Appellant had “again engaged in the tactics against which the Court cautioned, thus expending considerable unproductive activity.” Id. at *5. The District Court reviewed the Magistrate Judge’s Report and Recommendation to determine if it was “clearly erroneous or contrary to law” and, after determining that it was not, adopted it in its entirety. Baylor, 77 F.Supp.3d at 124.
In July 2014, the District Court granted Appellee’s Motion to Dismiss all of Appellant’s claims under the CPPA and some of her DCDCL claims. Following a contentious discovery process, in which the District Court affirmed a Magistrate Judge’s Memorandum Opinion granting in part and denying in part Appellant’s Motion to Compel production of certain communications between Appellee and an agent of its client, Appellant’s creditor, Appellee filed a Motion for Summary Judgment and Appellant filed a cross-Motion for Partial Summary Judgment. The District Court granted the former and denied the latter.
II. ANALYSIS
A. Standard of Review
This court reviews de novo the District Court’s decision to grant a motion to dismiss or motion for summary judgment and the “legal question” of whether it “improperly applied [a local rule] in place of the standards prescribed by [the Federal Rules of Civil Procedure].” Winston & Strawn, LLP v. McLean, 843 F.3d 503, 506 (D.C. Cir. 2016); see Nat’l Wildlife Fed’n v. Browner, 127 F.3d 1126, 1128 (D.C. Cir. 1997). We will, however, generally review discovery orders only for abuse of discretion, unless the District Court applied the wrong legal standard. United States v. Deloitte LLP, 610 F.3d 129, 134 (D.C. Cir. 2010).
*945 B. Appellant’s Fee Request
Local Civil Rule 72.2(a) permits the District Court to refer “any pretrial motion or matter,” with the exception of certain motions and petitions set forth in Local Civil Rule 72.3, to a Magistrate Judge. If any party files written objections to a Magistrate Judge’s ruling on such a matter, the District Court “may modify or set aside any portion of [the] order ... found to be clearly erroneous or contrary to law.” Local Civil Rule 72.2(c). Because Local Civil Rule 72.3 makes no specific mention of motions for attorney’s fees, the District Court assumed that a Magistrate Judge’s recommendation on a fee award could be reviewed according to the deferential “clearly erroneous or contrary to law” standard. This was error.
Federal Rule of Civil Procedure 54(d)(2)(D) states that a court “may refer a motion for attorney’s fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter,” a process which requires that a district judge “determine de novo any part of the magistrate judge’s disposition that has been properly objected to,” Fed. R. Civ. P. 72(b)(3). The permissive language of Rule 54(d)(2)(D), specifically its use of the word “may,” appears to have led the District Court to believe that referral via Local Civil Rule 72.2, with its attendant “clearly erroneous or contrary to law” standard of review, provided a legitimate alternative to the de novo review standard set forth in Federal Rules of Civil Procedure 54(d)(2)(D) and 72(b)(3). See Baylor, 77 F.Supp.3d at 117 & n.2. This was not an unreasonable mistake, but it was a mistake.
The Federal Magistrates Act permits district courts to draw upon the assistance of Magistrate Judges to resolve “any pretrial matter pending before the court.” 28 U.S.C. § 636(b)(1)(A). The power vested in Magistrate Judges to dispose of issues referred to them under this provision depends upon the type of motion at issue. 28 U.S.C. § 636(b)(1)(A) lists eight pretrial motions, including motions for summary judgement and injunctive relief, for which Magistrate Judges may only provide “proposed findings of fact and recommendations for the disposition [of the matter].” Id. § 636(b)(1)(B). These recommendations must be reviewed de novo by a district court judge if properly objected to by one of the parties. See id. § 636(b)(1)(C). For all other pretrial motions, Magistrate Judges are permitted to “hear and determine” the matter, and a district court will only set aside their order where it has been shown that it is “clearly erroneous or contrary to law.” Id. § 636(b)(1)(A); see Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 5-6 (1st Cir. 1999).
This differentiation between the degree of authority a Magistrate Judge is permitted to wield over certain motions, and the standard of review which must be applied to the judge’s proposed resolution of such matters, is rooted in “[constitutional concerns,” specifically the “possible ... objection that only an article III judge may ultimately determine the litigation.” 12 Charles Alan Wright et al., Federal Practice and Procedure § 3068.2, p. 367 (3d ed. 2014); see PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 13 (1st Cir. 2010).
When Rule 72 was promulgated to “implement the legislative mandate of Section 636(b)(1),” it retained § 631(b)(l)’s basic structure—dividing pretrial motions between issues that a Magistrate Judge could determine and those for which the judge could simply provide recommendations for consideration by the district court. 12 Charles Alan Wright et al., Federal Practice and Procedure § 3068, p. 351 (3d ed. 2014). It adopted a slightly different organizing principle, however. Rather than relying on § 636(b)(l)(A)’s list of eight motions to identify the pretrial *946 matters that a Magistrate Judge could not “determine,” Rule 72 distinguished between motions that were “not dispositive of a party’s claim or defense” and those that were. Fed. R. Crv. P. 72(a)—(b); see 12 Charles Alan Wright et al., Federal Practice and Procedure § 3068.2, p. 366 (3d ed. 2014). Nondispositive matters would be referred to a Magistrate Judge pursuant to Rule 72(a) and a district court would be required to “consider timely objections and modify or set aside any part of [an order issued following such a referral] that [was] clearly erroneous or [was] contrary to law.” Dispositive motions, meanwhile, would be referred to a Magistrate Judge via Rule 72(b) and the district court would be required to “determine de novo any part of [a] magistrate judge’s [recommendation] that ha[d] been properly objected to.” Fed. R. Civ. P. 72(b)(3).
In spite of the legal significance of the distinction between dispositive and nondis-positive motions it is not immediately apparent from the text of Rule 72 how, precisely, to determine whether a particular type of motion should be deemed to be “dispositive of a party’s claim.” While most courts agree that the eight motions set forth in § 636(b)(1)(A) are “dispositive,” this list has largely been deemed to be illustrative of the matters that could fall within the scope of Rule 72(b), rather than exhaustive. See Phinney, 199 F.3d at 5-6; Massey v. City of Ferndale, 7 F.3d 506, 508 (6th Cir. 1993).
Prior to the promulgation • of Rule 54(d)(2)(D), therefore, courts lacked any specific guidance regarding whether Magistrate Judges had the authority to provide a determination regarding a request for attorney’s fees as if it was a nondispositive motion or were instead permitted only to provide a recommendation regarding the disposition of such matters. Faced with this uncertainty, three circuits held that motions for attorney’s fees should be'treated as dispositive motions and thus subject to de novo review by a district court judge if properly objected to. See Massey, 7 F.3d at 509-10; Estate of Conners by Meredith v. O’Connor, 6 F.3d 656, 659 (9th Cir. 1993); Ins. Co. of N. Am. v. Bath, 968 F.2d 20, at *2 (10th Cir. 1992) (Order and Judgment). Two of these courts also held that Magistrate Judges lacked the authority to “determine[ ]” a fee request because it was a “post-dismissal motion[]” and Rule 72, by its terms, applies only to “pretrial matters.” Massey, 7 F.3d at 510 (quoting Bennett v. Gen. Caster Serv. of N. Gordon Co., 976 F.2d 995, 998 n.5 (6th Cir. 1992)); see Estate of Conners by Meredith, 6 F.3d at 659 n.2.
Rule 54(d)(2)(D) thus took effect at a time when it was by no means certain what, if any, authority Magistrate Judges could wield when evaluating motions for attorney’s fees and the degree of oversight district courts were required to provide over such matters. Its purpose, as described by the accompanying Advisory Committee Note, was to “eliminate[] any controversy” regarding a court’s ability to treat “motions for attorneys’ fees ... as the equivalent of a dispositive pretrial matter that can be referred to a magistrate judge.” Advisory Comm. Notes 1993 Amend. The statutory and legal backdrop against which this amendment took place make clear that this Rule was not intended to permit courts to rely upon the standards and procedures associated with dis-positive motions in addition to those for nondispositive motions. Indeed, providing district courts with the ability to alternate between these different standards would be anathema to the constitutional concerns that underlie the structure of § 636(b)(1) and Rule 72. Rather, Rule 54(d)(2)(D) provided that if a district court wished to refer a motion for attorney’s fees to a Magistrate Judge it could do so pursuant to the procedures laid out in Rule 72(b), *947 which include a requirement that the district court review a Magistrate Judge’s recommendation regarding a fee award de novo if properly objected to. Thus, in context, it is clear that Rule 54(d)(2)(D)’s use of the permissive verb “may” refers to the permissive nature of the district judge’s authority to refer the case to a magistrate, with no effect on the standard of review to be applied if the reference is made.
It is no response that Local Civil Rule 72.2 provides an “alternative[ ]” to Rule 54(d). Baylor, 77 F.Supp.3d at 117 n.2. While Rule 54(d)(2)(D) permits courts to establish by local rule “special procedures to resolve fee-related issues without extensive evidentiary hearings,” there is no indication this language was intended to loosen the standard that should be applied to a Magistrate Judge’s recommendation after such hearings have been conducted. Therefore, because district courts may not “circumvent the Federal Rules of Civil Procedure by implementing local rules or ‘procedures’ which do not afford parties rights that they are afforded under the Federal Rules,” we join a number of our sister circuits in requiring that motions for attorney’s fees be reviewed de novo if referred to a Magistrate Judge and properly objected to. Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 151 n.4 (D.C. Cir. 1996) (quoting Brown v. Crawford Cty., 960 F.2d 1002, 1008 (11th Cir. 1992)); see McCombs v. Meijer, Inc., 395 F.3d 346, 360 (6th Cir. 2005); ClearOne Commc’ns, Inc. v. Bowers, 509 Fed.Appx. 798, 804-05 (10th Cir. 2013); McConnell v. ABC-Amega, Inc., 338 Fed.Appx. 24, 26 (2d Cir. 2009); cf. Rajaratnam v. Moyer, 47 F.3d 922, 924 & nn.5, 8 (7th Cir. 1995) (finding that motion for attorney’s fees referred via 28 U.S.C. § 636(b)(3) required de novo review). To the extent that Local Civil Rule 72.2 can be understood to suggest anything to the contrary, it is overruled.
Because we find that the District Court applied the wrong standard when reviewing the Magistrate Judge’s Report and Recommendation, we will not reach the parties’ claims that the District Court erred in adopting the Magistrate Judge’s proposal to award Appellant approximately twenty percent of her requested attorney’s fees. Instead, we remand this matter to the District Court so that it can review the Magistrate Judge’s Report and Recommendation anew, and de novo.
C. Appellant’s CPPA Claims
Appellant contends that the District Court erred in dismissing her claim that Appellee’s conduct violated the CPPA, which creates an “enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia.” D.C. Code § 28-3901(c). We disagree. “In answering questions involving the proper interpretation of D.C. statutes, [we rely] on the construction of these laws by the D.C. Court of Appeals.” Poole v. Kelly, 954 F.2d 760, 761 (D.C. Cir. 1992) (per curiam). The D.C. Court of Appeals’ precedents and the text of the CPPA itself support the District Court’s determination that Appellee’s conduct does not fall within the aegis of this law.
One of the principal goals of the CPPA is to “assure that a just mechanism exists to remedy all improper trade practices.” D.C. Code § 28—3901(b)(1). To that end, it embraces both an expansive understanding of the conduct which constitutes a “trade practice”—“any act which does or would create, alter, ... make available, provide information about, or, directly or. indirectly, solicit or offer for or effectuate, a sale ... or transfer, of consumer goods or services”, which are “any and all parts of the economic output of society, at any stage or *948 related or necessary point in the economic process, and includes consumer credit ... and consumer services of all types”—and provides an extensive list of unlawful trade practices. D.C. Code § 28—3901(a)(6)—(7); see id. § 28-3904; Howard v. Riggs Nat’l Bank, 432 A.2d 701, 708 (D.C. 1981). These prohibited practices can only be committed by a merchant, an individual who “sell[s], ... or transfer[s], either directly or indirectly, consumer goods or services” or who, in the ordinary course of business, “supplies] the goods or services which are or would be the subject matter of a trade practice.” D.C. Code § 28-3901(a)(3); see DeBerry v. First Gov’t Mortg. & Inv’rs Corp., 743 A.2d 699, 701 (D.C. 1999).
There is little question, as Appellant notes, that a merchant who provides a consumer with credit, such as the loans at issue in this case, would fall comfortably within the scope of the CPPA. See DeBerry, 743 A.2d at 701; cf. Jones v. Dufek, 830 F.3d 523, 527-28 (D.C. Cir. 2016). Yet, that is not this case. Instead, we are confronted with a situation in which a debt collector, attempting to recoup funds on behalf of a creditor who did not itself provide Appellant with any credit, can be found liable under the CPPA. We tread carefully in analyzing this issue, as the D.C. Court of Appeals has explicitly refrained from addressing a related matter. See Logan v. LaSalle Bank Nat’l Ass’n, 80 A.3d 1014, 1026-27 (D.C. 2013) (abstaining from determining whether “the CPPA applies to the trade practices of a mortgage loan servicer”). However, our interpretation of that court’s precedents suggests that Ap-pellee’s conduct does not fall within the bounds of this statute.
The CPPA applies only to consumer-merchant relationships. See Snowder v. District of Columbia, 949 A.2d 590, 598-600 (D.C. 2008). However, decisions from the D.C. Court of Appeals indicate that a merchant need only be connected with the “supply side” of a consumer transaction for liability to attach. See Save Immaculata/Dunblane, Inc. v. Immaculata Preparatory Sch., Inc., 514 A.2d 1152, 1159 (D.C. 1986) (quoting Howard, 432 A.2d at 709). In this case, it appears that there are two ways in which the interactions between Appellant and Appellee might be viewed to come within the compass of this statute.
First, Appellant suggests that Appellee is connected to the supply side of the transaction in which Appellant first acquired her student loans. See Reply Br. for Appellant at 13. In our view, this argument is based on a strained construction of the statute. It is hard to see Appellee as a culpable party on the supply side of the transaction when we know that there was a merchant who initially provided the consumer credit and then subsequently transferred ownership of this debt after it was in default to a new creditor who, without providing Appellant with any “goods or services” to speak of, retained Appellee to collect on these loans. In this situation, it seems implausible to characterize Appellee as someone who sold or transferred consumer goods or services or who supplied the goods or services which are or would be the subject matter of a trade practice. See Osinubepi-Alao v. Plainview Fin. Servs., Ltd., 44 F.Supp.3d 84, 92-93 (D.D.C. 2014) (refusing to apply CPPA to “a licensed attorney [attempting] to collect the debt through litigation” where the attorney was not engaged in the practice of extending credit or selling debt); Busby v. Capital One, N.A., 772 F.Supp.2d 268, 279-80 (D.D.C. 2011) (refusing to apply CPPA to parties that did not sell or give goods or services to plaintiff).
Second, it might be argued that Appel-lee is a merchant in its own right. Yet, it seems perverse to suggest that the “consumer” of the services it provides—debt collection—is the individual from whom it *949 is attempting to collect rather than the creditor who retained it. The provisions of the CPPA cited in Appellant’s Complaint, D.C. Code § 28-3904(e) and (f), appear to apply only when a consumer is, or could be, misled by a merchant’s actions. See id. (“It shall be a violation of this chapter, whether or not any consumer is in fact misled [or] deceived ... for any person to ... misrepresent as to a material fact which has a tendency to mislead” or “fail to state a material fact, if such failure tends to mislead.”). The situation here does not fit within the statutory proscription.
In light of the terms of the statute, we are constrained to hold that Appellee’s conduct falls outside the scope of the CPPA. Appellant’s arguments to the contrary are unpersuasive. Because we find that Appellee’s actions did not take place within the context of a consumer-merchant relationship, as required by the CPPA, we need not address Appellant’s claim that debt collection is a “trade practice” as defined by this statute.
It is also unnecessary for us to address Appellant’s claim that the CPPA permits certain individuals or entities to seek remedies for “the use of a trade practice in violation of a law of the District,” including the DCDCL. D.C. Code § 28-3905(k)(l)(A); see id. § 28-3909; Br. for Appellant at 55. It is true that “[although § 28-3904 makes a host of consumer trade practices unlawful ... [t]he remainder of the statute ... contemplates that procedures and sanctions provided by the [CPPA] will be used to enforce trade practices made unlawful by other statutes.” Atwater v. D.C. Dep’t of Consumer & Regulatory Affairs, 566 A.2d 462, 466 (D.C. 1989). However, Count III of Appellant’s Complaint asserts only that Appellee’s actions ran counter to two specific provisions of the CPPA itself, D.C. Code § 28-3904(e)—(f). Complaint, JA 31-33. It makes no mention of Appellee’s alleged violations of any other laws as grounds for recovery under this statute.
For the foregoing reasons, we affirm the District Court’s decision to dismiss Appellant’s CPPA claims.
D. Appellee’s Claim of Attorney-Client Privilege
After the District Court granted in part Appellee’s Motion to Dismiss, the parties embarked on an “extremely long and contentious discovery process.” Baylor, 174 F.Supp.3d at 151. Further problems arose when Appellant filed a Motion to Compel production of certain communications between Appellee and Sunrise Credit Services, Inc. (“Sunrise”), the organization which retained Appellee to collect Appellant’s debt on her creditor’s behalf. Appel-lee refused to produce these documents, claiming that they were protected by attorney-client privilege. See Baylor v. Mitchell Rubenstein & Assocs., P.C., 130 F.Supp.3d 326, 328 (D.D.C. 2015). The District Court referred this matter to a Magistrate Judge who found that, because Appellant’s creditor, Arrowood Indemnity Company (“Arrowood”), had retained “Sunrise for the limited purpose of finding an attorney to help Arrowood collect [Appellant’s] debt,” Sunrise had “acted as Ar-rowood’s agent for obtaining legal services.” Baylor v. Mitchell Rubenstein & Assocs., P.C., 2015 WL 4624090, at *4 (D.D.C. July 31, 2015). The Magistrate Judge, after reviewing the matter, concluded in turn that attorney-client privilege attached to some of the communications that Appellee wished to withhold.
In finding that attorney-client privilege attached to communications between Sunrise and Appellee, the Magistrate Judge looked to both Maryland and D.C. law, and held that both states recognize that attorney-client privilege extends to communications between a client’s agent and his at *950 torney. See id. at *1-2; Baylor, 130 F.Supp.3d at 330 n.2 (explaining that the court need not resolve a dispute regarding which state’s law applied because there were no substantive differences between the two jurisdictions (citing Cruz v. Am. Airlines, 356 F.3d 320, 332 (D.C. Cir. 2004))); see also In re Sealed Case (Medical Records), 381 F.3d 1205, 1212 (D.C. Cir. 2004) (noting that when an individual asserts “state claims,” such as the DCDCL claims at issue here, “state privilege law applies”). We need not address this determination because Appellant does not contest it on appeal.
The arguments advanced by Appellant before this court speak only to the questions of: (1) whether Appellee provided “record evidence” in support of its claims regarding the nature of the relationships between Appellee, Sunrise and Arrowood, Br. for Appellant at 65; and (2) whether two cases, E.I. du Pont de Nemours & Co. v. Formal-Pack, Inc., 351 Md. 396, 718 A.2d 1129 (1998) and J.H. Marshall & Associates., Inc. v. Burleson, 313 A.2d 587 (D.C. 1973), preclude this court from holding that attorney-client privilege could attach to the communications at issue. We find that the District Court did not abuse its discretion in resolving these issues. We are also unpersuaded by Appellant’s claim that the District Court abused its discretion in refusing to award her attorney’s fees for her efforts in relation to this matter.
The District Court properly found that Appellee had “proffered adequate evidence” to support its assertion that Sunrise served as Arrowood’s agent and an attorney-client relationship existed between Appellee and Arrowood. See Baylor, 130 F.Supp.3d at 331; id. at 330 (noting that “[a]t bottom, most of [Appellant’s] objections boil down to her claim that [Ap-pellee] failed to offer evidence sufficient to show an agency relationship between Ar-rowood and Sunrise”). Appellee offered an affidavit describing the relationship between Arrowood and Sunrise and two “authorizations by Arrowood for Sunrise to retain counsel.” See id. at 331; Appellee’s Opposition to Appellant’s Motion to Compel, Dkt/ No. 72-2, Ex. 4, at 41-42; Dkt. No. 72-3, Ex. 4, at 64-65; Dkt. No. 73-4, Ex. 5, at ¶¶ 4-5. Although the affidavit is spare, we cannot say that the District Court abused its discretion in holding that the Magistrate Judge’s determination that this evidence sufficed to support a finding of attorney-client privilege was not clearly erroneous or contrary to law.
Appellant raises two additional arguments to suggest that attorney-client privilege cannot attach to the disputed communications. First, she contends that attorneys engaged in the business of debt collection cannot invoke this privilege. Br. for Appellant at 64 (citing E.I. du Pont, 718 A.2d 1129). The precedent she cites in support of this claim, E.I. du Pont, is distinguishable from the instant case. In E.I. du Pont, the court held that the privilege did not apply to communications between a corporation and a “non-lawyer collection agency” where the corporation had hired this agency only “for the typical business purpose of collecting a debt” even though the agency had subsequently hired an attorney to “litigate the debt collection matter after [the agency’s] efforts [to collect on the debt] proved unsuccessful.” 718 A.2d at 1141-42. It justified this decision by noting that the agency “may certainly have been [the corporation’s] agent for the business purpose of collecting [a] debt” but it was “not hired as an agent for purposes of litigation.” Id. at 1142. Here, however, the Magistrate Judge specifically found that Sunrise was hired only for “the limited purpose of finding an attorney to help Arrowood collect [Appellant’s] debt” and never itself attempted to undertake “direct collection *951 actions” against Appellant. Baylor, 2015 WL 4624090, at *3-4. We find that the District Court properly held that the Magistrate Judge was not clearly erroneous in determining that this precedent did not preclude Appellee from claiming that certain of its communications with Sunrise were covered by attorney-client privilege. See Baylor, 130 F.Supp.3d at 334-35.
Second, Appellant asserts that Sunrise’s actions constitute the unauthorized practice of law and, as such, attorney-client privilege cannot attach to its communications. In support of this claim, Appellant draws upon J.H. Marshall, in which the D.C. Court of Appeals held that a collection agency that filed suit to collect on a debt assigned to it by a creditor had engaged in the unauthorized practice of law. 313 A.2d at 590-91. Central to the D.C. Court of Appeals’ reasoning in that case was its belief that a collection agency could not “interpose itself between a creditor and an attorney seeking to collect the creditor’s claim,” id. at 595, and a concern that the collection agency in J.H. Marshall was “sell[ing] the services of a lawyer, whom it controls and directs, thereby destroying the privity between attorney and client,” id. at 597. However here the Magistrate Judge specifically held that Sunrise served only to find “an attorney to help Arrowood collect [Appellant’s] debt.” Baylor, 2015 WL 4624090, at *4. The Magistrate Judge made no findings that Sunrise ever attempted to collect on Appellant’s debt on its own or otherwise serve as anything other than an “intermediary between Arrowood and [Appellee].” Id. at *3. In the absence of additional findings suggesting that Sunrise controlled and directed Appellee’s conduct, we hold that the District Court did not abuse its discretion in affirming the Magistrate Judge’s determination that Sunrise did not engage in the unauthorized practice of law.
Finally, Appellant claims that the District Court abused its discretion in refusing to award her attorney’s fees relating to her Motion to Compel production of communications between Appellee and Sunrise. However, this motion was only partially successful, and Federal Rule of Civil Procedure 37(a)(5)(C) vests the District Court with discretion to “apportion ... reasonable expenses,” if such a motion is “granted in part and denied in part,” as it was here. See Order, JA 185. We see no abuse of discretion in the District Court’s determination that Appellant’s limited success and “unduly contentious and overly lengthy pleadings” did not entitle her to attorney’s fees and costs. Baylor, 130 F.Supp.3d at 337.
E. Appellant’s DCDCL Claims
In her Complaint, Appellant asserted that Appellee’s conduct had violated a variety of provisions of the DCDCL, a statute which prohibits creditors and debt collectors from engaging in certain activities such as “collecting] any money ... by means of threat [or] coercion.” D.C. Code § 28-3814(c); see Complaint, JA 29-31. Only two of these claims survived Appel-lee’s Motion to Dismiss: (1) Appellant’s contention that Appellee misrepresented the amount that she owed in its various letters to her, and (2) her argument that Appellee improperly contacted her after she retained counsel. See Baylor, 55 F.Supp.3d at 49-53. Following a protracted discovery process, the District Court granted Appellee’s Motion for Summary Judgment and denied Appellant’s Motion for Partial Summary Judgment regarding these claims. We affirm this decision.
A creditor or debt collector is subject to liability under the DCDCL only when a claimant offers substantial evidence to prove a “willful violation” of the law. See D.C. Code § 28-3814(j)(l). We note, as the *952 District Court did in the proceeding below, that neither this court nor the D.C. Court of Appeals appears to have set forth the standard for determining what constitutes “willful” conduct. While we can find no fault in the District Court’s decision to treat this term as embracing “not only-knowing violations of [the DCDCL], but reckless ones as well,” we refrain, out of deference to the D.C. Court of Appeals, from specifically adopting this standard when interpreting this statute. Baylor, 174 F.Supp.3d at 153 (quoting Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007)). Instead, we note simply that no definition of willfulness advanced by any party in this litigation suggests that Appellee’s conduct can be viewed as a “willful” violation of this law. See id. at 153 n.5 (summarizing definitions of “willfulness” advanced by Appellant in the proceeding below, including her claim that this standard is satisfied if Ap-pellee “knowingly and intentionally committed an act in conscious disregard for the rights of others” or violates the statute “voluntarily with either an intentional disregard of, or plain indifference to, the Act’s requirements”); Br. for Appellee at 15 (adopting District Court’s interpretation of willfulness).
In reviewing Appellant’s contention that the District Court erred in granting Appellee’s Motion for Summary Judgment and denying her Partial Motion for Summary Judgment, this court must determine whether a genuine dispute as to any material fact exists when “viewing the evidence in the light most favorable to the non-movant.” Wheeler v. Georgetown Univ. Hosp., 812 F.3d 1109, 1113 (D.C. Cir. 2016). We are cognizant that where, as here, we consider cross-motions for summary judgment, we must accord both parties the solicitude owed non-movants. Nevertheless, in this case, in order to resolve the parties’ disputes over the DCDCL claims, it will suffice for us to address Appellant’s claims in order and assess the evidence in the light most favorable to her. As we explain below, even on these terms, Appellant’s claims fail.
1. D.C. Code § 28-3814(g)(5): Appel-lee’s Contact With Appellant After She Retained Counsel
Section 28-3814(g)(5) of the DCDCL bars “debt collectors] ... [from using] unfair or unconscionable means to collect or attempt to collect on any claim ... [by communicating] with a consumer whenever it appears that the consumer has notified the creditor that he is represented by an attorney and the attorney’s name and address are known.” Neither party disputes the fact that Appellant received a letter from Appellee after her counsel had informed it to cease contacting Appellant directly. Appellee, however, notes that this letter was addressed to Appellant’s counsel, and attributes its appearance at Appellant’s doorstep to a “computer error.” Declaration of Mitchell Rubenstein, JA 508. In an affidavit attached to Appellee’s Motion for Summary Judgment, its president explained that Appellee’s computer system had merely “failed to update the address on the letter to reflect [Appellant’s counsel’s] mailing address.” Id.
Appellant, meanwhile, argues that Ap-pellee lacked “procedures reasonably calculated to avoid [this] error” and claims that Appellant’s explanation for its failure to direct all of its communications to Appellant’s counsel in its Motion for Summary Judgment differs from that proffered in its Motion to Dismiss. Appellant’s Opposition to Appellee’s Motion for Summary Judgment, Dkt. No. 90, at 5; see Br. for Appellant at 58. Yet, the record contains evidence that Appellee did, in fact, have procedures which explicitly barred its staff from “contact[ing] or responding] to a consumer if the consumer is represented *953 by counsel.” Baylor, 174 F.Supp.3d at 159. Furthermore, as the District Court noted, there is no reason why Appellee cannot offer “an alternative explanation for its conduct” at summary judgment. See id. at 158-59 n.9. Because Appellee’s assertion that the letter was mistakenly sent to Appellant’s home due to a computer error is not controverted by anything in the record, we find that, even assessing the evidence in the fight most favorable to Appellant, she has failed to raise a genuine question of material fact as to whether Appellee violated § 28-3814(g)(5) of the DCDCL. See Johnson v. Perez, 823 F.3d 701, 705 (D.C. Cir. 2016) (noting that a court “may not ... believe one witness over another ... [but] if one party presents relevant evidence that another party does not call into question factually, the court must accept the uncontroverted fact”).
2. D.C. Code § 28-3814(f)(5): Appel-lee’s Misrepresentations Regarding the Amount that Appellant Owed
D.C. Code § 28-3814(f)(5) provides that a debt collector may not “use any fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims ... [via] any false representation or implication of the character, extent, or amount of a claim against a consumer.” There is no question that Appellee provided different figures for the amount that Appellant owed on her first and second set of loans in its various letters to her. However, Appellee’s president avers that these errors were due to its reliance on Sunrise’s representation of the “amount forwarded” for collection from Arrowood. Declaration of Mitchell Ruben-stein, JA 506. He stated that during Appel-lee’s fifteen year “relationship with Sunrise .... [he had] found that the ‘amount referred’ fisted in [its] referral form to be [an] accurate statement as to the present balance owed on [an individual’s] debt” and that Appellee had not “knowingly failed to include accrued interest” in its February 21 and August 22, 2013 letters “or otherwise misstate the amount” Appellant owed. Id. at 506-508.
In response, Appellant puts forth a slew of claims regarding the training Appellee’s employees received and the roles which non-attorneys perform in attempting to collect on various debts. See Memorandum in Support of Appellant’s Motion for Partial Summary Judgment, Dkt. No. 91-1, at 2-6; Opposition to Appellee’s Motion for Summary Judgment, Dkt. No. 90, at 5-7; Reply to Opposition to Motion for Partial Summary Judgment, Dkt. No. 103, at 4-16. Only two appear to be relevant to the specific question of whether Appellee willfully misrepresented the amount that Appellant owed: (1) Appellant’s claim that Appellee failed to “maintain or implement any practices or procedures to prevent its employees and managing partner from demanding inaccurate amounts in its demand letters” and lacks “any procedures relating to the DCDCL,” Dkt. No. 103, at 4; see Br. for Appellant at 56; and (2) her argument that a conversation between Appellee and Sunrise, in which Appellee asked if it was possible to “make things simple” by applying an interest rate of 3.75% from the date of Appellant’s last payment to her debt after Sunrise had informed Appellee the loans had been “accruing interest at 4% since placement,” demonstrated that Appellee permitted its employees to falsify the amount of debt owed by the individuals it sent collection letters to. Collection Notes, JA 489-90; Br. for Appellant at 58-59.
The first of these arguments is easily set aside. As the District Court noted, Appel-lee maintains policies and procedures which state that “[p]rior to the issuance and mailing of any demand letter, a firm attorney must review the file to ensure *954 that ... [t]he claim amount matches the amount the creditor claims is owed.” Baylor, 174 F.Supp.3d at 157. Nothing in the record indicates that an attorney did not review the demand letters sent to Appellant, or that more specific policies are required to ensüre that the firm’s policies are in step with the requirements of the DCDCL.
Appellant’s claim that the conversation between Appellee and Sunrise regarding the correct interest rate to be applied surely does not suffice to demonstrate that Appellee willfully misrepresented the amount that Appellant owed. Even assessing this evidence in the light most favorable to Appellant, what she offers by way of argument is not enough to show a willful violation of the law. Indeed, if anything, the interaction appears to demonstrate that Appellee was attempting to bring the interest rate it would relay to Appellant in line with the information it had been provided regarding this debt, rather than conjure an interest rate “on a whim,” as Appellant claims. See Dkt. No. 84-4, Ex. 3, at 13 (noting that the “interest amount” had been calculated through “8-12-11,” that the interest rate was 3.75%, and that the last date Appellant had paid was 10-21-11); Appellee’s Opposition to Motion to Compel, Dkt. No. 71, at 4 (describing this document as the “account referral and suit authorization from” Sunrise to Appellee). In other words, the uncontested facts hardly support an inference that Appellee acted to willfully violate the law.
In light of the record before us, and after having reviewed the claims de novo, we affirm the District Court’s decision to grant Appellee’s Motion for Summary Judgment on Appellant’s DCDCL claims.
III. CONCLUSION
For the reasons set forth above, we remand the District Court’s Order awarding Appellant attorney’s fees in relation to her FDCPA claim so that it may review the Magistrate Judge’s Report and Recommendation on this matter de novo. We affirm all of the other Orders challenged in this appeal.