# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-41136

United States Court of Appeals
Fifth Circuit

**FILED**

November 16, 2018

Lyle W. Cayce
Clerk

CRYSTAL DAVIS,

Plaintiff - Appellant

v.

CREDIT BUREAU OF THE SOUTH,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before STEWART, Chief Judge, and JONES and ENGELHARDT, Circuit Judges.

PER CURIAM:

Crystal Davis appeals the district court's denial of her motion for attorney's fees, arguing that an award of reasonable attorney's fees is mandatory for a successful action under the Fair Debt Collection Practices Act. Based on the outrageous facts in this case and the conduct of Davis' attorneys, we AFFIRM.

## FACTS AND PROCEEDINGS

Appellant Crystal Davis (Davis) filed a complaint in the Eastern District of Texas alleging that Credit Bureau of the South (CBOTS), a debt collector,

violated the Fair Debt Collection Practices Act (FDCPA)[1] and the Texas Debt Collection Act (TDCA)[2] by using the words "credit bureau" in its name, misrepresenting itself as a credit bureau in an attempt to collect a debt. Davis identified two incidents when CBOTS allegedly attempted to unlawfully collect the debt at issue—a 2013 water bill in the amount of $107.29 Davis owed to the City of Shreveport. First, Davis alleged that on August 18, 2015, CBOTS mailed her a collection letter on letterhead "that clearly stated 'Credit Bureau of the South, Inc.'" The second violation Davis alleged involved a recorded phone call she made to CBOTS on September 22, 2015, during which Davis claims CBOTS misrepresented itself as a credit bureau in its collection efforts.

The parties filed cross motions for summary judgment.[3] Following a hearing, the magistrate judge concluded in his Report and Recommendation that "summary judgment evidence establishes that Defendant engaged in debt collection activities while using the term 'credit bureau' in its name, even though it ceased to be a consumer reporting agency years ago." Relying on *McKenzie v. E.A. Uffman & Assocs., Inc.*, 119 F.3d 358 (5th Cir. 1997), the magistrate judge found that these facts "constitute the false representation or implication that [CBOTS] is a consumer reporting agency in violation of the FDCPA," and recommended that Davis be awarded $1,000 in statutory damages. Accepting the magistrate judge's recommendation and finding that CBOTS violated section 1692e(16) of the FDCPA, the district court granted

---

[1] 15 U.S.C. §§ 1692e(10), (16) and § 1692f.

[2] Tex. Fin. Code § 392.301(a)(8), § 392.304(a)(19), § 392.305.

[3] CBOTS' motion for summary judgment included an alternative motion to transfer venue to the District Court for the Western District of Louisiana, arguing that Davis was a citizen of Louisiana (not a citizen of Texas) and that all relevant events occurred in Louisiana. CBOTS' motions were denied.

summary judgment, in part, in favor of Davis and awarded her statutory damages of $1,000.[4] The district court rejected all other claims.[5]

Davis filed a subsequent opposed motion for attorney's fees in the amount of $130,410, pursuant to 15 U.S.C. § 1692k(a)(3).[6] The motion was referred to the magistrate judge, who denied Davis' motion for attorney's fees, finding that the case involved special circumstances that would render an award of attorney's fees unjust:

> It appears that this cause of action was created by counsel for the purpose of generating, in counsel's own words, an "incredibly high" fee request. While Defendant has been found to have committed a violation of the FDCPA, which ordinarily justifies an award of fees as a disincentive to future similar conduct, the Court is even more concerned about disincentivizing the conduct of Plaintiff's counsel.

As further support of his decision, the magistrate judge discussed, *inter alia*, that the collusion between Davis and her counsel essentially created her claim. Additionally, the magistrate judge explained that the court was "stunned" by Davis' request for $130,000 in attorney's fees, noting that there were substantial duplicative and excessive fees charged by Plaintiff's multiple counsel; the case was simple with a Fifth Circuit case on point and was disposed of on summary judgment; and the number of hours (nearly 300 hours), as well as the hourly rate of $450 demanded by Plaintiff's counsel, was "excessive by orders of magnitude."

---

[4] Notably, there were no actual damages in this case.

[5] The TDCA claim was rejected by the district court on summary judgment and is not challenged on appeal. Additionally, Davis failed to provide credible record evidence of her claim for mental anguish (or any other actual damages) and, unsurprisingly, explicitly waived her TDCA cause of action and mental anguish claim at the summary judgment hearing/pretrial conference.

[6] In her motion, Davis requested attorneys' fees of $70,447.50 to Jonathan Raburn and $59,962.50 to Dennis McCarty, based on a "reasonable" $450.00 hourly fee.

No. 17-41136

Davis objected to the magistrate judge's denial of attorney's fees, contending that given the favorable summary judgment ruling and the plain language of the statute, an award of attorney's fees is mandatory. Thus, Davis argued that the magistrate judge erred in denying her mandatory attorney's fees and that his reasoning was flawed. Without providing further written reasons, the district judge overruled Davis' objections to the magistrate judge's denial of attorney's fees, adopting the order as its final judgment. Davis timely appealed.

## STANDARD OF REVIEW

We review the district court's denial of attorney's fees for abuse of discretion. *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 550 (5th Cir. 2003). "In evaluating whether the district court abused its discretion to award attorney's fees, this Court reviews the factual findings supporting the grant or denial of attorney's fees for clear error and the conclusions of law underlying the award *de novo*." *Dearmore v. City of Garland*, 519 F.3d 517, 520 (5th Cir. 2008) (citing *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 482 (5th Cir. 2006)). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *CenterPoint Energy Hous. Elec. LLC v. Harris Cnty. Toll Rd. Auth.*, 436 F.3d 541, 550 (5th Cir. 2006) (quoting *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005)).

## DISCUSSION

According to the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Specifically, the Act prohibits the "false representation or implication that a debt collector operates or is employed by a consumer reporting agency . . . ." 15 U.S.C. § 1692e(16). The

No. 17-41136

FDCPA's fee-shifting provision provides that any debt collector who fails to comply "*is liable . . .* in the case of any successful [FDCPA] action . . . [for] the costs of the action, together with a *reasonable* attorney's fee *as determined by the court*." 15 U.S.C. § 1692k(a)(3) (emphasis added). This provision evidences Congress' intent to enforce the FDCPA through a "private attorney general" approach. *See Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991).

Based on the plain language of the statute, a debt collector who fails to comply with the FDCPA "is liable" for reasonable attorney's fees, which suggests that district courts are denied the discretion to determine whether or not attorney's fees are appropriate. Several circuits have held that the award of attorney's fees to a successful plaintiff in an FDCPA action is mandatory. *See, e.g.*, *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1032 (9th Cir. 2012); *Zagorski v. Midwest Billing Servs., Inc.,* 128 F.3d 1164 (7th Cir. 1997); *Emanuel v. Am. Credit Exch.*, 870 F.2d 805, 809 (2d Cir. 1989). Thus, these courts have found it an abuse of discretion to deny attorney's fees to a prevailing debtor as required by the FDCPA. *See, e.g., Zagorski*, 128 F.3d at 1164; *Emanuel*, 870 F.2d at 809.

The Third and Fourth Circuits have recognized an exception to the mandatory attorney's fee under § 1692k, suggesting that the FDCPA permits outright denial in "unusual circumstances." *See Graziano*, 950 F.2d at 114; *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995). In *Graziano v. Harrison*, the Third Circuit stated that a court may decline to award a prevailing FDCPA plaintiff attorney's fees "only in unusual circumstances . . . [and] in such circumstances, it should formulate particularized findings of fact and conclusions of law explaining its decision." 950 F.2d at 114. The *Graziano* court provided further insight: "The presence of bad faith conduct on the part of a plaintiff would surely be an unusual circumstance justifying a denial of an

5

attorney's fee. Inability of a losing party to pay the attorney's fee is not a relevant consideration, however." *Id.* at n.13 (citations omitted).

Although neither party cites a Fifth Circuit case that has found special circumstances warranting the denial of attorney's fees in an FDCPA action, we have acknowledged the viability that "special circumstances" can justify a decision not to award fees in similar contexts. For example, while "[p]laintiffs as prevailing parties [under 42 U.S.C. § 1988] ordinarily should recover an attorney's fee," a district court may deny an award of fees if "special circumstances would render such an award unjust." *Romain v. Walters*, 856 F.3d 402, 407 (5th Cir. 2017) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)); *see also Sanchez v. City of Austin*, 774 F.3d 873, 880 (5th Cir. 2014) ("The special-circumstances exception is a narrow carve-out of the general rule that prevailing civil-rights plaintiffs should be awarded fees."). In *Romain v. Walters*, we noted that our precedent requires an "extremely strong showing of special circumstances to avoid paying attorneys' fees and that the discretion to deny § 1988 fees is . . . extremely narrow. . . . In the absence of special circumstances a district court not merely may but *must* award fees to the prevailing plaintiff." *Romain,* 856 F.3d at 407–08 (internal quotations and citations omitted).

Further, we have narrowly interpreted the FDCPA attorney's fee provision. In *Johnson v. Eaton*, this court held that although plaintiff demonstrated a technical violation of the FDCPA, she was not entitled to attorney's fees because she did not prove actual damages and was not awarded statutory damages, reasoning that the statute required a "successful action to enforce the [claimed] liability." 80 F.3d 148, 151 (5th Cir. 1996). In *Johnson*, the plaintiff won a declaration that the defendant violated the FDCPA, "but was unable to prove any damages, either actual or additional, under the statute." *Johnson*, 80 F.3d at 152. Consequently, this court concluded that

plaintiff was not entitled to attorney's fees under the FDCPA for her technical victory and, alternatively, that the most appropriate award of attorney's fees was $0.00: "[E]ven if we did agree with Johnson that she merits an award of a reasonable attorney's fee against White for proving that White violated the FDCPA, we would find that a reasonable attorney's fee in cases where no actual or additional damages were awarded is $0.00." *Id.* (citing *Farrar v. Hobby,* 506 U.S. 103, 120 (1992)).

Notwithstanding Davis' award of statutory damages, we conclude that the extreme facts of the instant case justify the district court's denial of attorney's fees. *See Carroll*, 53 F.3d at 628; *Graziano*, 950 F.2d at 114; *see also de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 & n.4 (1st Cir. 1990) (reasoning that because the Truth in Lending Act's "attorney's fees provision is phrased in mandatory, rather than discretionary terms—it is evident that fees may be denied a successful plaintiff only in the most unusual of circumstances" such as bad faith, obdurate conduct, unjust hardship, or other special circumstances). "And even assuming arguendo that some 'reasonable' fee is always required, 15 U.S.C. § 1692k(a)(3), the statutory text does not preclude a court from deciding—consistent with its inherent authority to protect the integrity of its proceedings, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42–51 (1991)—that a 'reasonable' fee in response to an exorbitant request is a nominal amount approaching zero." *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 958 (D.C. Cir. 2017) (Henderson, J., concurring) (collecting appellate cases that have held that a court may punish an intolerably excessive fee request by denying any award at all).

While attorney's fees need not be proportionate to the minimal statutory damages in FDCPA cases, they must nevertheless be reasonable. *See Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995) ("In order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that

counsel be awarded fees commensurate with those which they could obtain by taking other types of cases."). The Supreme Court has explained that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The district court may increase or decrease the amount of attorney's fees based on a number of factors, including the time and labor required; difficulty of the question; skill needed; amount involved and results obtained; time limitations imposed by the case; and experience, reputation, and ability of the lawyers. *See id.* at 434–37; *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). "The determination of a reasonable attorney's fee is left to the sound discretion of the trial judge." *Weeks v. S. Bell Tel. and Tel. Co.*, 467 F.2d 95, 97 (5th Cir. 1972).

Despite recognizing that a successful FDCPA case ordinarily justifies an award of attorney's fees, the district court declined to award fees in this case based on several thoroughly discussed reasons revolving around the conduct of Davis and her counsel. We agree with the district court's reasoning. As an initial matter, we join the magistrate judge's stunned reaction to Davis' request for $130,000 in attorneys' fees and concur that "the record reflects neither the quality of legal work necessary for the requested hourly billing rate ($450.00 per hour), nor the quantity of work to support the 156.55 hours claimed by Jonathan Raburn and the 133.25 hours claimed by Dennis McCarty." The pleadings filed by McCarty and Raburn, including the brief on appeal, are replete with grammatical errors, formatting issues, and improper citations, and is certainly not the caliber of work warranting such an extraordinary hourly rate.

The record does not suggest that the district court applied the incorrect method in considering Davis' request for attorney's fees. The district court's fee

calculus involved a consideration of the number of hours it found reasonable for the type of litigation involved, as well as the "reasonable hourly rate for the services rendered by counsel." This is consistent with the lodestar method that is applied by this circuit. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013*)* (quoting *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999)).

The magistrate judge appropriately reduced the fee request based on Plaintiff's limited success, emphasizing that Davis failed on the Texas law claim and on the claim for compensatory and exemplary damages under the FDCPA. *See Hensley*, 461 U.S. at 436 (degree of success obtained is the most critical factor in determining the reasonableness of the award of attorney's fees). The court assessed further reductions based on the unnecessary duplication of efforts by McCarty and Raburn (citing duplications in counsel's time records), *see Walker v. U.S. Dept. of Hous. and Urban Dev.*, 99 F.3d 761, 768 (5th Cir. 1996), finding that the case was not complex enough to require or justify multiple counsel. The court excluded excessive time,[7] considering the simplicity of the claim, that Plaintiff only took one deposition, and that the case was disposed of on summary judgment with Fifth Circuit precedent directly on point. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Finally, the court found that the $450 hourly rate request "exceeds by half the rate justified by the work performed for Plaintiff in this case."

Despite the district court's failure to assign numerical values to its reductions or "show its work" so to speak, it can be inferred that the district court found that the reasonable attorney's fee owed in this case was $0 (no fee

---

[7] Raburn and McCarty collectively charged over $8,000 in travel fees alone. Additionally, the fee request included a charge for an attorney-client meeting that occurred on August 13, 2015—a date *prior* to the events Davis alleged in her complaint as the collection efforts that gave rise to her lawsuit (August 18, 2015 and September 22, 2015).

at all). In addition to the aforementioned substantial reductions it discussed, the court "confidently" concluded—albeit with minimal jurisprudential guidance[8]—that the circumstances of this case constitute "special circumstances" that would render an award of attorney's fees unjust. This was largely based on the district court's finding of bad faith conduct on the part of plaintiff and her counsel: "It appears this cause of action was created by counsel for the purpose of generating, in counsel's own words, an 'incredibly high' fee request."[9] Specifically, in the order denying Davis' motion for attorney fees, the district court concluded that Davis and her counsel colluded in establishing the cause of action and created the appearance that CBOTS, a Louisiana entity, engaged in debt collection activities in Texas.

These factual findings are supported by the record. In her deposition, Davis admits that she called CBOTS and requested that CBOTS mail the water bill to her parents' address in Hallsville, Texas. Davis also testified that she retained Jonathan Raburn in April 2015, a date prior to CBOTS' alleged FDCPA violations, and worked for the Raburn Law Firm in the summer of 2015. At the pretrial hearing, McCarty also admitted that CBOTS mailed the water bill to Davis' parents' house in Texas per Davis' request. This provoked conduct (mailing of the August 18, 2015 "collection letter" to Texas address) is one of only two incidents wherein Davis alleged that CBOTS violated the FDCPA.[10] Notably, there is no mention of other attempts made by CBOTS to collect this debt since CBOTS mailed a statement of the bill to Davis' home in

---

[8] The district court recognized that little jurisprudence exists on what facts constitute "special circumstances" that would render such an award unjust.

[9] The magistrate judge stated, "Indeed, Plaintiff's counsel surprisingly admit in their motion that they 'warned Defendant to take the mediation seriously because the attorney's fees was [sic] going to be incredibly high if it couldn't get resolved,'" threatening $200,000 in attorney's fees.

[10] Moreover, this was the only connection to Texas and provided the sole basis for Davis' claim under the Texas Debt Collection Act.

Shreveport in 2013. The magistrate judge expressed his suspicions of Davis and her counsel at the hearing:

> [C]ertainly the appearance is that she had it [the water bill] mailed to Texas for the purpose of generating this cause of action. It just seems suspicious to me that while employed by the law firm she asks for this Shreveport bill to be mailed to Texas and now files a lawsuit based upon that mailing.

Additionally, Davis admits that the phone call she made from Shreveport to CBOTS on September 22, 2015, which was one of at least three calls wherein she asked the same questions, was recorded using the Raburn Law Firm's recorder, and was apparently made in the presence of her attorney, Jonathan Raburn. Raburn's involvement in the recorded phone call—conduct at the center of this case—arguably made him a fact witness, potentially disqualifying him from representing Davis.[11] Although Davis is correct that CBOTS failed to raise the disqualification argument at the district level and thus waives it here, CBOTS nevertheless asserted, and the district court considered, allegations of collusion between Davis and her counsel. Such allegations are relevant to the consideration of the conduct of Davis' counsel and the special circumstances inquiry.

In the complaint, Davis' counsel misrepresented that Davis was a citizen of Harrison County, Texas, despite the overwhelming evidence that Davis was a citizen of Louisiana: she had a Louisiana driver's license, her vehicle was registered in Louisiana, she was registered to vote in Louisiana, she filed her

---

[11] *See Champaneria v. Brachfeld Law Grp., PC,* 3:12-CV-86, 2013 WL 244899, *3 (S.D. Tex. Jan. 22, 2013) (denying Defendant's disqualification argument made after default judgment was entered because the argument did not reach the merits of the case, and even if successful would only affect one of Champaneria's two attorneys); *McCarty v. Allen L. Adkins & Assocs., PC*, 3:12-CV-3852 (N.D. Tex. Feb. 20, 2013) (disqualifying Dennis McCarty from representing plaintiff, finding that McCarty was directly involved in the event that prompted the FDCPA suit [a phone call to the debt collector], making him a material witness to the facts underlying the suit).

state and federal income tax returns in Louisiana, and she lived and worked in Louisiana.[12] Counsel maintained this inaccurate representation in the answers to interrogatories and deposition of Davis. At the pretrial conference, the magistrate judge questioned McCarty about the truth of the representation made in the complaint, finding the only indication that Davis was a citizen of Texas was that her parents lived in Texas, which was insufficient to establish citizenship. McCarty conceded to the court that he knew that Davis could only be a citizen in one state, averring that he made a "mischoice of words" and offering to amend the complaint. Despite this admission and his lack of success below, counsel attempts to convince this court that Davis had "dual residency."[13] The record does not support that Davis was a *citizen* of Texas. For these reasons, there is nothing in the record to suggest that the district court's conclusions or ethical concerns are based on an incorrect assessment of the facts.

In exercising its broad discretion in deciding attorney's fees, the district court also considered the purpose of the FDCPA's attorney fee provision, finding that no such incentive was needed here "since her counsel essentially created her claim." Davis was employed by her attorney's law firm, the Raburn Law Firm, and on June 11, 2015—*prior to* the underlying lawsuit—she wrote an article articulating that it was against the law for a debt collector to use the words "Credit Bureau" in its company name, explicitly recognizing the difference between debt collectors and credit bureaus. While Davis' knowledge

---

[12] CBOTS filed a motion for sanctions pursuant to Fed. R. Civ. P. 11 based on this misrepresentation.

[13] *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006) (an individual that resides in more than one state is regarded as a citizen of but one state); *see also Acridge v. Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 451 (5th Cir. 2003) ("The general rule is that a person has only one domicile at a particular time.").

is not relevant in determining whether a FDCPA violation occurred, it further supports that Davis is not the type of person Congress intended to protect with the attorney fee-shifting provision.

Moreover, as conceded by Davis' counsel at oral argument, there were no actual damages in this case: the record contains no credible evidence of mental anguish and Davis testified that she had not suffered any economic loss. In denying an award of attorney's fees for a technical violation of the FDCPA, without actual or additional damages, this court in *Johnson* stated:

> Reading the FDCPA as requiring attorney's fees to be paid in actions where the plaintiff fails to prove damages, rewards lawyers for bringing suits to stop behavior that, by definition, has caused legal injury to no one. Our interpretation of the statute will require attorneys to look for more than a technical violation of the FDCPA before bringing suit and will deter suits brought only as a means of generating attorney's fees.

*Johnson*, 80 F.3d at 151. *Contra Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989) ("Because the FDCPA was violated . . . the statute requires the award of costs and a reasonable attorney's fee," without requiring plaintiff to prove actual or additional damages.). While the case *sub judice* is distinguishable because Davis was awarded statutory damages, *Johnson* is illustrative of our disapproval of utilizing technical violations of the FDCPA solely as a means for generating attorney's fees.

In short, it appears that McCarty and Raburn lost sight of the real party in interest. The magistrate judge condemned the unreasonable attorney's fee request: "Plaintiff's counsel seem to believe that prevailing on a very simple claim under the FDCPA gives rise to a blank check for attorney's fees." The record suggests that McCarty and Raburn—in an attempt to receive an unwarranted and inflated award—impermissibly treated the $130,410 fee request as an "opening bid" in an attempt to negotiate the attorney's fee award. *See Baylor*, 857 F.3d at 959 (Henderson, J., concurring) (persuasively

criticizing such tactics in FDCPA cases). "If similar demands become the norm . . . they will sow distrust and spawn satellite fee litigation—one of the last things lawyers and judges should be spending their time on." *Id.* at 960.[14] This simply cannot be tolerated. Bottom-line: the FDCPA does not support avaricious efforts of attorneys seeking a windfall. Because grossly excessive attorney's fee requests directly contravene the purpose of the FDCPA, these tactics must be deterred. "Steep overbilling ought to come at a steep price." *Baylor*, 857 F.3d at 960 (Henderson, J., concurring).

Although complete denial of otherwise generally mandatory attorney's fees is a rare and drastic sanction, the outrageous facts in this case suggest that the district court did not abuse its discretion in determining that Davis was not entitled to attorney's fees, or that the reasonable attorney's fee was $0. The district court calculated a reasonable hourly rate to be, at most, $225 (half of the $450 demanded), which can further be reduced based on the poor draftsmanship that permeates the pleadings. The district court cited valid, precedentially-supported reasons for reducing the number of hours and amount of the fee award claimed by Davis' attorneys. Moreover, given the district court's desire to "disincentivize the conduct of Plaintiff's counsel," coupled with an additional, punitive reduction (or outright denial) for McCarty and Raburn's exorbitant fee request, it was not an abuse of discretion for the district court to deny Davis' motion for attorney's fees.

---

[14] Justice Brennan aptly characterized appeals from awards of attorney's fees as "one of the least socially productive types of litigation imaginable." *Hensley*, 461 U.S. at 442 (Brennan, J., concurring in part and dissenting in part); *see also Carroll*, 53 F.3d at 628 (noting the "systemic costs of such appeals [of requests for attorney's fees] are often disproportionate to the limited benefits achieved by appellate second-guessing of a district court's fee calculation").

No. 17-41136

## CONCLUSION

Because this case presents special and unusual circumstances justifying the denial of attorney's fees, the judgment of the district court is AFFIRMED.